*Richmond.*

• BLANKENSHIP BY &C. *v.* CHESAPEAKE & O. R. Co.

March 25, 1897.

1. EVIDENCE—*Refusal to allow a proper question—Harmless error.*—Although a trial court may err in refusing to allow a question to be asked and answered, the judgment will not be reversed for this cause where it appears that, in a subsequent portion of his testimony, the witness did give the information sought, and that no injury resulted to the propounder of the question.

2. EVIDENCE—*Acts of Assembly.*—The refusal of the trial court to allow an Act of Assembly to be introduced in evidence can work no harm where the court is of opinion that the act is a public act, and offers to allow it to be read to the jury as such without such introduction.

3. EVIDENCE—*City ordinance as to speed of trains—Irrelevancy.*—An ordinance of a city regulating the running of trains at street crossings is irrelevant where the alleged injury did not occur at a street crossing, and is properly excluded from the evidence.

4. RAILROADS—*Trespassers—Licensees—Place constantly used by the public—Duty of company at such place.*—Although there is a recognized distinction between the degree of care which a railroad company owes, under ordinary circumstances, to a trespasser and a licensee, yet where the company knows that its right of way at a certain point is constantly used as a footway by hundreds of men, women, and children, passing over it daily, and at all hours, its servants are charged with notice that it is so used, and whether the persons so using it are trespassers or licensees, the railroad company cannot, without fault, proceed in a manner which must necessarily be dangerous to such persons. It is the duty of the servants of the company to use reasonable care to discover such persons, whether trespassers or licensees, and seek to avoid injury to them.

5. INSTRUCTIONS—*Must be given when law correctly stated—Care required of infant.*—An instruction which correctly states the law, and is applicable to the evidence, should be given by the trial court, and for a failure to do so its judgment will be reversed. In the case at bar, it was error to refuse to instruct the jury, at the request of the plaintiff, as to the degree of care required of an infant ten years of age.

6. RAILROADS—*Trespassers—Contributory negligence.*—If a trespasser on a railroad track is injured by an engine of the company at a point where it is the duty of the servants of the company to keep a look out for all persons, whether trespassers or licensees, he is entitled to recover for injury, although guilty of contributory negligence, if the servants of the company in charge of the engine did not do all they could consistently with their own safety to avoid the injury after his danger was known, or might have been discovered by the exercise of ordinary care in keeping a lookout for persons at that point.

7. EXCEPTIONS—*Particularity required—Reading authorities to the jury.*—An exception because the trial court refused to permit counsel to read authorities to the jury, including decisions of the Supreme Court of Appeals of Virginia, will be overruled where the exception fails to show clearly and specifically what cases and what extracts from text-books were offered, so that this Court may see what, if any, prejudice resulted therefrom.

Error to a judgment of the Circuit Court of the city of Richmond, rendered April 17, 1894, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the evidence. After the evidence was concluded, both the plaintiff and the defendant asked a number of instructions, all of which the court refused to give, and, in lieu thereof, instructed the jury as follows:

"1. The jury are instructed that in order to find for the plaintiff they must believe from all the evidence that the defendant was guilty of negligence which occasioned the injury to the plaintiff.

"If they shall believe from the evidence that the defendant was not exercising reasonable or ordinary care in the use of its engines and tracks at the time of the accident, and that the injury to plaintiff was occasioned by the failure to exercise such care, they should attribute to the defendant's negligence.

"The burden of proving that there was such negligence is upon the plaintiff.

"2. The defendant was not bound to provide a way for the accommodation of the public through its property, either on the south side or the north side of the canal, and persons undertaking to use the defendant's property as a thoroughfare took the risks incident to the use by the defendant of its engines and tracks, with reasonable or ordinary care to avoid injury to persons passing through its yard, and if the jury believe from the evidence that engine 14 was running at the usual and ordinary speed for the transaction of defendant's business on its yard; that the bell of the engine was being rung, and that the persons in charge of the engine were keeping a reasonable lookout, they are instructed that the defendant was not guilty of negligence, even though the engineer did not see the plaintiff, and they should find for the defendant.

"3. But even if the jury find the defendant guilty of negligence and shall further believe from the evidence that the injury to the plaintiff would not have been occasioned without his own contributory negligence, in failing to exercise for his own protection such care and caution as might be naturally and reasonably expected from a boy of his age, maturity, information, and intelligence, they should find for the defendant.

"The burden of proving contributory negligence and of satisfying the jury that the plaintiff was of such age and maturity as to be capable of committing such contributory negligence is upon the defendant.

"4. If the jury believe from the evidence that the plaintiff was a boy of such maturity and intelligence, and that he had such knowledge of the yard and the use of it for running trains and engines as to be able to understand and appreciate the danger of the locality; and shall further believe that he had been warned by the employees of defendant and others to keep away from the premises, or that he undertook, at the time of his injury, to run across or along the railroad

track on which engine No. 14 was approaching, and that the
engine was in full view and could have been seen or heard by
him, if he had listened or looked down the track, or that in
any other respect he failed to exercise such care and caution
as a boy of his maturity and intelligence could have been
reasonably expected to exercise, under the circumstances,
and thereby contribute to the injury he sustained, the jury
should attribute to him contributory negligence.

"If they do not so believe, or if they believe that after
the servants of defendant, in charge of engine No. 14, knew
of the danger of the plaintiff, they failed to do all in their
power to avert the injury, they should find for the plaintiff."

"5. If the jury should find for the plaintiff, they should
assess his damages at such sum as they believe would be a
fair compensation for the pain and suffering occasioned by
the injury, and such loss as they may believe he has sustained
and he will probably sustain hereafter by reason of any disa-
bility for remunerative labor consequent upon his injury."

To which action of the court in refusing to give the instruc-
tions offered by the plaintiff, and in giving its own instruc-
tions hereinbefore set forth the plaintiff excepted.

*Edmund Waddill, Jr., L. L. Lewis* and *Geo. J. Hooper,*
for the plaintiff in error.

*H. T. Wickham, Wm. J. Robertson* and *Henry Taylor,
Jr.,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, who was an infant ten years of age, was run
over by an engine and tender of the defendant company, in
its yard in the city of Richmond, and for the injuries done
him he brought an action by his next friend.   Upon a trial
of the cause there was a verdict and judgment for the defend-
ant.   To that judgment this writ of error was awarded.

The first assignment of error is to the action of the court in refusing to allow one of the witnesses of the defendant to be asked upon cross-examination if he did not remember that at the last trial of the case, he did not state anything about Tommie Brooks coming down the railroad. The object of this question was to test the recollection of the witness as to a material point in the defence set up by the defendant, and was, therefore, a proper question; and whilst the court erred in not allowing it to be asked and answered, no prejudice resulted to the plaintiff therefrom, as the witness afterwards, in reply to another question, stated what his recollection was as to his testimony on that point at the former trial.

The next error assigned is to the action of the court in refusing to allow the plaintiff to introduce in evidence certain acts of the General Assembly by which the James River and Kanawha Company were incorporated, and by which that company was afterwards authorized to make sale of its property and franchises to the Richmond & Alleghany Railroad Company, to whose rights the defendant succeeded. The bill of exceptions states that the court refused to allow those acts to be introduced in evidence, "holding, however, as said acts were public acts, they could be read by the plaintiff's counsel to the jury, if they so desired, as a part of their evidence."

The bill of exceptions shows on its face that no prejudice could possibly have resulted to the plaintiff from the court's action, and that this assignment of error is wholly without merit.

In the same bill of exceptions it was stated that the court refused to permit the plaintiff to introduce in evidence a certain ordinance of the city of Richmond which regulated the running of locomotive engines in that city at street crossings. The injury complained of did not occur at a street crossing, but in the defendant's yard. The ordinance contained nothing that was relevant to the case, and was properly excluded.

The plaintiff offered fifteen instructions and the defendant eight, all of which were refused by the court, and in lieu thereof it gave five of its own. The action of the court in refusing the plaintiff's instructions, and in giving its own, is assigned as error.

Without attempting any detailed discussion of the numerous instructions offered by the plaintiff and rejected by the court, we will consider the question whether the instructions given by the court correctly stated the law applicable to the case, and properly submitted it to the jury. In order to do so, however, it will be necessary to state briefly what the evidence in the case tended to prove.

The evidence of the plaintiff tends to show that the plaintiff, a boy a little over ten years of age, and who lived on High street, near the defendant's yard, went, on the day he was injured, from home across the railroad tracks to the north bank of an old canal immediately south of the defendant's tracks, where boys were swimming in the canal; that he walked along down the north bank of the canal to the Tredegar bridge, near the east end of the yard. After remaining there some time he started home through the yard, walking slowly upon the track known as the long siding, and after proceeding a short distance he saw an engine behind him on the same track approaching; he thereupon got off the track and went upon what is known as the main track, which runs parallel with and next to the long siding, and, after running a short distance up the track, to see if he could run as fast as the engine on the long siding, he stopped, and was immediately run over by an engine going in the same direction; that it was running at the rate of from ten to fifteen miles an hour, and gave no warning of its approach, either by sounding the whistle or ringing the bell; that the men on the engine were engaged in conversation and not keeping a lookout when the plaintiff was injured; that immediately east of the Tredegar bridge, the point at which the plaintiff went,

there is a very sharp curve around the foot of Gamble's Hill, which prevents a person in the yard between that bridge and the foot of High street from seeing an approaching train but a few feet east of the Tredegar bridge.

The evidence of the defendant tended to show that while it was true that many persons were constantly passing through the yard with the defendant's knowledge, yet objection to it had occasionally been made, and that for many years a warning written on a board in large letters had been placed on a post at the Tredegar bridge forbidding persons from going upon the property of the defendant under penalty of the law, and that the plaintiff and others had been warned to keep off, and had been put off the premises. It further tended to show that the engine which did the injury was running from four to eight miles an hour; that, at the time and before the accident, the bell was being rung; that the engineer, when the plaintiff went on the main track, was not looking out, but was testing the water in his engine, but that the yardmaster, who was occupying the fireman's position on the engine, was on the lookout, and that, as soon as the boy was seen, which was when he went upon the main track, the yardmaster called to the engineer to stop; that this was done as quickly as possible, but not until both the engine and tender had passed over the plaintiff.

The plaintiff's counsel insist that the court erred in refusing to instruct the jury that if they believed from the evidence that certain facts were proven, then the plaintiff was not a trespasser, but a licensee.

There seems to be a recognized distinction in the degree of care which a railroad company owes, under ordinary circumstances, to a trespasser, and to one who is upon its right of way by the license of the company. In a case like the one at bar, however, where the company knows that its right of way at a certain point is constantly used as a footway by hundreds of men, women and children, passing over it daily

and at all hours, its servants are charged with notice that it is so used, and whether the persons who are thus using it are trespassers or licensees the railroad company cannot, without fault, proceed in a manner which must necessarily be dangerous to such persons.

It is said in 2 Shearman & Redfield on Negligence, sec. 484 (4th ed.), "that a railroad engineer is not bound, usually, to foresee the wrongful presence of any person upon the track, even where it is open to an adjoining highway; nor to foresee the wrongful entry of persons on its cars, but if his experience has shown that persons are constantly thus entering upon the tracks or the cars, such persons, if injured by reason of the engineer's failure to use ordinary care to keep watch for them, may recover damages if the engineer could have seen them without difficulty, had he kept a reasonable watch, even though in fact he did not see them. This qualification of the general rule has been sometimes denied, but incorrectly."

"Although a person be a trespasser, he may recover," as was said by this court in the case of *Seaboard &c. R. Co.* v. *Joyner*, 92 Va. 354, 363, "notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief." This statement of the law was approved in the cases of *Tucker* v. *N. & W. R. Co.* 92 Va. 549, and of *N. & W. R. R. Co.* v. *Dunnaway*, 93 Va. 29.

It may be said, in passing, that it was not intended in the last named case to change the rule laid down in Joyner's case

so as to require a higher degree of duty from a railroad company toward trespassers on its tracks, as counsel of plaintiff in error seem to think, and as the language, quoted in their brief from the opinion in the Dunnaway case, might perhaps warrant when separated from the context and considered without regard to the facts of the case.

By the use of the language "when the trespasser is discovered, or by ordinary care and caution might have been discovered," it was not intended to say that, under ordinary conditions, it was the duty of the railroad company to keep a lookout for trespassers (for that question was not involved in that case), but to declare where it had such notice or belief that some one might be in danger as ought to put a prudent man on the alert, it became the company's duty to be on the lookout, and that it might be held responsible for injury done to a trespasser under such circumstances, not only after his danger was discovered, but where, by ordinary care and caution, it might have been discovered, unless it did all that could be done to avoid injuring him consistently with its higher duties to others.

The uncontradicted evidence in this cause shows that the defendant knew that hundreds of men, women and children were passing over and along its tracks in the yard daily. It was its duty, therefore, to exercise reasonable care to discover and not to injure persons whom (whether they were trespassers or licensees), it might reasonably expect to be on its tracks at that point, and, as it owed this duty alike to licensees and trespassers under the peculiar facts of this case, it was not necessary for the court to give instructions to the jury as to whether the plaintiff was a licensee or trespasser.

One of the instructions (No. 10) asked for by the plaintiff, is as follows: "The jury are instructed that the rule as to contributory negligence on the part of a child, is that it is required to exercise only that care which a person of that age would naturally and ordinarily use in the same situation, and

under the same circumstances, and that in determining the relative degree of care or want of care manifested by the parties at the time of the injury, the age and discretion of the parties injured are proper subjects of inquiry for the jury.

"The law does not require that a child shall exercise the same degree of care and caution as a person of mature years, but only such care and caution as a person of its age and discretion would naturally and ordinarily use."

That this instruction correctly states the law is not controverted by counsel for the defendant, and it ought to have been given. This court has repeatedly said that where a party offers an instruction which correctly states the law, and is applicable to the facts of the case, it is the duty of the court to give it (see 4 Minor, 3d ed., Secs. 1084-5, and cases cited), and that for a failure to do so its judgment must be reversed unless the court gives a correct instruction in lieu thereof.

The court's instruction No. 4 was intended as a substitute for that, and another instruction. It is in this language:

"If the jury believe from the evidence that the plaintiff was a boy of such maturity and intelligence, and that he had such knowledge of the yard and of the use of it for running trains and engines, as to be able to understand and appreciate the danger of the locality; and shall further believe that he had been warned by the employees of defendant and others to keep away from the premises, or that he undertook, at the time of his injury, to run across or along the railroad track on which engine No 14 was approaching, and that the engine was in full view and could have been seen or heard by him, if he had listened or looked down the track, or that in any other respect he failed to exercise such care and caution as a boy of his maturity and intelligence could have been reasonably expected to exercise, under the circumstances, and thereby contribute to the injury he sustained, the jury should attribute to him contributory negligence.

"If they do not so believe, or if they believe that, after the servants of the defendant, in charge of engine No. 14,

knew of the danger of the plaintiff, they failed to do all in their power to avert the injury, they should find for the plaintiff.''

Although the plaintiff may have been guilty of contributory negligence, he would still be entitled to recover if it appeared that the servants of the defendant in charge of the engine did not do all they could consistently with their own safety to avoid the injury after his danger was known, or might have been discovered by the exercise of ordinary care in keeping a lookout for persons at that point, as we have seen it was their duty to do, yet the court, by its instructions, makes the liability of the defendant depend upon their knowledge of his danger, and not upon what they might have known if they had exercised such care as the law required.

Instructions No. 2 and 3, given by the court, are erroneous in the same respect. No. 2 does not state the qualification to the rule correctly, and No. 3 omits the qualification entirely, and tells the jury that they must find for the defendant if they believe the plaintiff was guilty of contributory negligence.

The assignment of error to the action of the court in refusing to permit the counsel of the plaintiff in error "to read certain authorities to the jury, among them decisions of the Supreme Court of Appeals of Virginia," must be overruled. To raise the question intended to be presented by that assignment of error, the bill of exceptions ought to have shown clearly and specifically what cases and what extracts from text-books were offered, so that this court might be able to see what, if any, prejudice could have resulted to the plaintiff from the court's action.

It is unnecessary to consider the other assignments of error as the judgment of the Circuit Court will have to be reversed for the errors already referred to, and a new trial awarded, to be had in accordance with the views expressed in this opinion.

*Reversed.*