WILLIAM HERMAN MORRIS, BY W. J. MORRIS HIS *prochein ami*, PLAINTIFF IN ERROR, VS. THE FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY, DEFENDANT IN ERROR.

Negligence by Railroad Company—Section 1 of Chapter 4071, Acts of 1891, Construed.

1. Section 1 of Chapter 4071, Laws of 1891, was adopted here from the Code of the State of Georgia. Under its provisions, what will constitute the amount or kind of diligence that will be required as "ordinary and reasonable" must necessarily vary under different circumstances. It cannot be measured or ascertained by any fixed and inflexible standard, because the words

just quoted are themselves relative terms, and what, under some conditions, would be ordinary and reasonable diligence, might, under other conditions, amount to even gross negligence.

2. In said statute, Chapter 4071, the term "ordinary care" is not used in the narrowest and most confined sense of the word "ordinary," but is intended therein to require of railroad companies, in the cases falling within its provisions, all the care and diligence ordinarily due from them, under.like circumstances, exigencies, and conditions in like cases, such care and diligence to be in every case covered by the statute, strictly commensurate with the demands and exigencies of the occasion, and by the relationship that the company bears at the time to the party in question. It is not the design of this statute, in its use of the word "ordinary," to abrogate established phrases, such as "highest degree of care," expressive of the comparative degrees of care due from such companies in varying cases to persons occupying differing relations to the company, and surrounded by varying circumstances and conditions. Its meaning is that. in order to fulfill the required measure of "all ordinary and reasonable care and diligence" in the particular case of one of its passengers, *e. g.* it must exercise all the care and diligence ordinarily due to passengers, which, by comparison, is the highest degree of care. strictly and reasonably commensurate with his relationship as such to the company and with the circumstances and exigencies of the situation.

Writ of Error to the Circuit Court for Duval County.

### Statement.

The plaintiff in error, William H. Morris, by W. J. Morris his *prochein ami,* on the 24th day of January, 1895, instituted his action of trespass for personal injuries against the defendant in error, the Florida Central and Peninsular Railroad Company, in the Circuit Court of Duval County. The original declaration in the cause is as follows: (1) "Herman Morris, by his next friend William J. Morris through Fletcher and Wurts, his attorneys, sues the Florida Central and Peninsular Railroad

12    SUPREME COURT.    [43rd Fla.

Morris v. Fla. Central & Peninsular R. R. Co.—Statement of Case.

Company, a corporation organized and doing business under the laws of the State of Florida, for that heretofore, to-wit: on the 11th day of December, A. D. 1894, the defendant was the owner and operator of a line of railroad leading into and out of the city of Jacksonville, in the county and state aforesaid, and by means of the said lines of railroads was engaged in the business of carrying goods and passengers for hire; and in furtherance of its said business on the day aforesaid the defendant owned and maintained in the city of Jacksonville a large number of tracks comprised within certain limits called a yard, which said tracks were then in use for the purpose of delivering and receiving freight and making up defendant's trains; that one of said tracks, to-wit: North track nearest Bay street in said city of Jacksonville extended from a switch near the viaduct in said city eastward to and along the rear of stores on Bay street across the end of Cedar street in said city if projected south from Bay street, and nearly opposite the intersection of said Cedar street with said Bay street, the defendant commonly kept and maintained an opening to its yard and roadway leading across said north track in order to afford access to its other tracks lying south of said tracks and to afford ingress and egress for doing its business in connection with its tracks beyond and south of said crossing and said north track; that on the day aforesaid the plaintiff lawfully went into said opening and on said crossing and there were box cars east of said opening or crossing, but none west thereof on said track, but as plaintiff reached said track and was lawfully crossing the same a train belonging to the defendant and controlled by servants of the defendant and propelled by a locomotive called a pusher or switch engine belonging to the defendant, without any notice or signal to him, but through

the negligence of the servants of the defendant then in the employ of the defendant the said train was propelled backward with great speed, striking the plaintiff and knocking him down, and the rear trucks of the car of the train thus propelled ran over plaintiff and crushed, mashed and mangled his left arm in such manner as to render it necessary that the said arm should be amputated between the wrist and elbow, and also mashed and mangled and tore the flesh from the plaintiff's leg below the knee, by reason of which the plaintiff suffered and still suffers great bodily harm and mental anguish and is maimed for life, and plaintiff claims $20,000 damages.

(2) The plaintiff Herman Morris by his next friend William J. Morris further sues the defendant, the Florida Central and Peninsular Railroad Company, a corporation as aforesaid, for that the defendant was possessed of a railroad locomotive and train of cars attached thereto and was by its servants driving and conducting the same upon its certain track in the city of Jacksonville, county and State aforesaid, and the plaintiff was lawfully crossing the said railroad track, and the defendant by its servants so negligently drove and conducted the said engine and train that thereby the same was and were driven against the plaintiff and severely injured him, wherefore the plaintiff says he has sustained damage to the amount of $20,000.

(3) The plaintiff further sues the defendant, for that heretofore, to-wit: on the 11th day of December, A. D. 1894, in the city of Jacksonville, Duval county, Florida, the plaintiff walked upon and along a certain roadway, open to the public, extending from Bay street through unenclosed grounds across the track of defendant nearly opposite the intersection of Bay and Cedar streets in the city of Jacksonville from Bay street to other tracks of de-

fendant, and at a certain crossing of the said roadway and a certain railroad of the defendant, to-wit: the north track in its yard in said city of Jacksonville; the defendant was then and there possessed of a certain locomotive engine and train of cars then propelled thereby, which said locomotive, engine and train were then and there under the management of divers then servants of the defendant who were then and there driving the same upon and along the said railroad, near and towards the crossing aforesaid; and which the plaintiff with all due care and diligence was then and there walking across said railroad track at the said crossing upon the said railway there, the defendant then and there by its servants, so carelessly and improperly drove and managed the said locomotive engine and train that by and through the negligence and improper conduct of the defendant, by its servants in that behalf, the said train was then and there run upon and struck with great force and violence the plaintiff, and thereby the plaintiff was knocked down and the rear trucks of the rear car of the said train ran over and upon his left arm and leg tearing and mashing the flesh from his said leg and so mangling, crushing and mashing his said arm as to render it necessary to amputate it between the elbow and wrist, and the plaintiff was thereby greatly wounded, bruised and hurt, and was maimed for life, and he became sick, sore, lame and disordered, and so remained for a long space of time, to-wit: hitherto, during all which time he, the plaintiff, suffered great pain. Wherefore the plaintiff says he is injured and has sustained damages to the amount of $20,000, and therefore he brings his suit.

(4) And the plaintiff further sues the defendant for that heretofore, to-wit: on the 11th day of December, A. D. 1894, the defendant owned and operated a line of rail-

road leading into the cty of Jacksonville, county of Duval, aforesaid, and was then and there engaged in the business of carrying freight and passengers for hire, and at its terminus in said city of Jacksonville it used and maintained a large number of tracks comprised within its depot grounds or yard, lying south of Bay street and extending along the same from Bridge to Hogan streets in said city of Jacksonville, and across the ends of Clay, Cedar and Julia streets; that at said time defendant's yards and tracks opposite the intersection of Bay and Cedar streets were accessible by an open roadway corresponding to an extension of Cedar street south, which was kept open by defendant and at this point, for the width of some forty feet, there was an open roadway or driveway entering defendant's grounds, winding to the right a short distance and then extending between coal bins, one on either side, across defendant's track some distance southward to other tracks of defendant; that defendant had no enclosure of its said grounds as aforesaid at this point, but maintained this opening and roadway, so leading across its tracks as aforesaid, out to Bay street; that the plaintiff on the day aforesaid was living with his parents in the second story of a building on the south side of Bay street fronting the same and extending back to the northerly track of defendant's on which some box cars were standing, near and west from said building; that from the front of said building on Bay street said opening or driveway leading to defendant's grounds and across its tracks was west about one hundred feet; that plaintiff was then, to-wit; three years and four months of age, and had always been carefully protected, looked after and cared for by his parents and forbidden going on the streets alone, but the said day, without the fault or negligence or lack of due care on the part of his

parents and unknown to them, he went alone into a store
next door to where he lived and thence into the yard
of defendant through said unenclosed place along said
driveway, and to and upon its said northerly track which
was exposed as aforesaid, being its first track south of
Bay street, and at said crossing leading between the said
bins on defendant's said track was playing, as a child of
his age naturally would, being attracted there by said rail-
way and said tracks and said cars and the said unenclos-
ed grounds; that plaintiff being of the age aforesaid was
incapable of understanding and appreciating the danger
of his position or that he was technically incautious or
trespassing; that plaintiff was and is deaf and dumb; that
he was in said position but a few minutes when the loco-
motive engine called a pusher or switch engine, in con-
trol and under direction of defendant's servants violently
pushed and drove a train of cars of the defendant from
the direction of the switch located in said yard some dis-
tance west of where plaintiff stood, said track turning
gradually southward in its westerly course from said
crossing toward the switch eastward to and upon and
against the plaintiff with great force; that no signal
was given, there was no switchman or brakeman on the
rear of said train so driven as aforesaid, and without
notice or warning to the plaintiff said train was negli-
gently shoved and driven by said engine with great vio-
lence, and was negligently forced down said track upon
the plaintiff, detached from said engine and un-
controlled by a brakeman or switchman or oth-
erwise, and after said train struck plaintiff
it was only stopped by colliding with said box
cars standing on said track just east of said crossing; that
through the negligence of defendant by its servants this
plaintiff was violently knocked down by said train, his

left arm was mashed and crushed so that it became nec-
essary to amputate it between the wrist and elbow, and
his left leg was mangled and mashed and he, was other-
wise hurt, bruised and injured. By reason of defendant's
negligence by its servants as aforesaid the plaintiff was
injured as aforesaid and was maimed for life, and became
and was sick, sore, lame and so maimed, to-wit; hitherto,
during all which time plaintiff suffered great pain, and
plaintiff claims $20,000 damages."

To this declaration and to each of the four counts
thereof the defendant demurred, assigning as grounds
of demurrer the following:

"1st. Does not state a cause of action.

2nd. Does not state facts showing negligence on
the part of defendant.

3rd. Is vague, indefinite, uncertain as to the alleged
road at the point where said plaintiff is alleged to have
been injured.

4th. The declaration does not state facts showing
that the point at which the injury occurred was upon a
public highway on which the plaintiff and the public had
a right to be at the time of the alleged injury."

(And to the second count the following additional
grounds of demurrer:—)

"5th. Second count states no facts whatever show-
ing cause of action or negligence on part of defendant."

(And the following additional grounds of demurrer
to the fourth count:)

. 6th. This count shows negligence of plaintiff and
his parents in permitting plaintiff to attempt to cross the
tracks of defendant."

This demurrer was sustained by the court, and the
plaintiff filed his amended declaration as follows: "Her-
man Morris by his next friend William J. Morris, by

43 Fla.—3.

18　　　　　SUPREME COURT.　　　　[43rd Fla.

Morris v. Fla. Central & Peninsular R. R. Co.—Statement of Case.

Fletcher & Wurts, his attorneys, sues the Florida Cen-
of Florida, for that heretofore, to-wit: on the 11th day
tral & Peninsular Railroad Company, a corporation or-
ganized and doing business under the laws of the State
of December, 1894, the defendant owned and operated a
line of railroad leading into the city of Jacksonville in
said county and State, and having its terminus in the
said city of Jacksonville, and that it possessed a tract of
land lying adjacent to Bay street, which said Bay street is
the most frequented thoroughfare of the said city, and
the plaintiff further avers that the said tract of land on
the day aforesaid was used by the defendant as a switch
and freight yard and was in constant use for loading and
unloading freight cars, and for making up trains by
switching cars back and forth, all of which operations
were naturally attractive and interesting to a child of
tender years and were likely to cause a child of tender
years to wander on to the said premises and to expose
itself to injury upon the tracks of the said yard; and the
plaintiff further avers that the position, occupation and
uses of the said tract of land as aforesaid were well known
to the officers of the defendant, and they further well
knew that the uses aforesaid woud naturally interest and
attract a child of tender years and would naturally in-
duce a child of tender years to wander upon the said
premises and to expose itself to injury from the use
aforesaid, all of which were in their nature dangerous to
life and limb; and the plaintiff further avers that at a
point on said Bay street opposite to the intersection of
Bay and Cedar street, much frequented by pedestrians
of all ages, including children of tender years, the defen-
dant maintained an open roadway leading from said Bay
street into the said premises and around and among the
defendant's tracks, which said roadway on the day afore-

said was in common use by all persons having business with the defendant to receive or deliver goods upon the said premises, and which said roadway had every appearance of being a highway open to the public. And the plaintiff further avers that the existence of the said roadway and its location and use on the day aforesaid were well known to the officers of the defendant, yet the defendant on the day aforesaid wantonly and with a reckless disregard for human life was guilty of gross negligence, in that no barrier or guard was maintained or stationed at the intersection of the said roadway with said Bay street, and no precautions whatever were taken to prevent children of tender years from wandering into and upon the said premises among the shifting trains. And the plaintiff avers that he was on the day aforesaid of the age of three years and four months, and had always been carefully protected, looked after and cared for by his parents, and had been forbidden to go on the streets alone, but on the said day, without the fault or negligence or lack of due care on the part of his parents and unknown to them, he went alone into a store next door to where he lived and thence into the yard of defendant, through said unenclosed place, along said roadway and to and upon one of the defendant's tracks, which was exposed as aforesaid, being its first track south of Bay street and in said yard, and was there playing as a child naturally would, being attracted there by said roadway and said track and said cars and the said unenclosed grounds; that plaintiff being of the age aforesaid, was incapable of understanding and appreciating the danger of his position or that he was technically incautious or trespassing; that plaintiff was and is deaf and dumb, and that he was in said position but a few minutes when a locomotive engine called a pusher or

switch engine in control of and under direction of defendant's servants violently pushed and drove a train of cars of the defendant from the direction of the switch, located in said yard some distance west of where plaintiff stood, said track turning gradually southward in its westerly course from said crossing toward the switch, eastward to and upon and against the plaintiff with great force; that no signal was given, there was no switchman or brakeman on the rear of said train so driven as aforesaid, or at said crossing, or any other person to give any warning or signal, and without notice, or warning to the plaintiff said train was negligently shoved and driven by said engine with great violence and was negligently forced down said track upon the plaintiff, and after said train struck said plaintiff it was only stopped by colliding with said box cars standing on said track just east of said crossing; that through the negligence of said defendant by its servants this plaintiff was violently knocked down by said train, his left arm was mashed and crushed so that it became necessary to amputate it between the wrist and elbow, and his left leg was mangled and mashed and he was otherwise hurt, bruised and injured. By reason of defendant's gross and wanton negligence by its servants as aforesaid the plaintiff was injured as aforesaid and was maimed for life, and became and was sick, sore, lame, and so maimed to-wit: hitherto, during all which time plaintiff suffered great pain to the damage of plaintiff $20,000.

(2) And for second count to the amended declaration the plaintiff avers all the averments of the first count, and further avers that on the day aforesaid the said roadway across and among said tracks was open and customarily used by great numbers of people which was known to the officers of the defendant, and that the

43rd Fla.]　　JANUARY TERM, 1901.　　21

Morris v. Fla. Central & Peninsular R. R. Co.—Statement of Case.

agents and servants of the defendant were guilty of gross and wanton negligence in this, that they failed to provide any person to stand on the rear of or near the said moving car to warn persons of the danger therefrom, and failed to give any signal of the approach of the car in any way, by reason whereof the plaintiff was injured as aforesaid. The plaintiff claims $20,000 damages."

To this amended declaration and to each of the counts thereof the defendant demurred upon the following grounds: "1st. Said counts show on their face that plaintiff was not entitled to be on the track of defendant where he was hurt, and that the plaintiff was a trespasser on same.

2nd. Show no right of plaintiff to be on the track of defendant.

3rd. Does not show any intentional injury inflicted by defendant, which is necessary in case of this kind to base recovery against defendant upon.

4th. It is insufficient to state as a conclusion that the premises of plaintiff were attractive and interesting to the plaintiff and caused the plaintiff to expose himself to injury.

5th. Does not show that at the point where plaintiff was injured defendant allowed and maintained an open roadway to the public.

6th. The plaintiff being an infant of the years claimed in the declaration, and deaf and dumb, required all the more care on the part of the parents that he should not be permitted to go upon the track of the defendant.

7th. Does not allege that defendant's employes saw plaintiff on the track or had any knowledge of his being on the track at the time or before he was hurt.

22          SUPREME COURT.          [43rd Fla.

Morris v. Fla. Central & Peninsular. R. R. Co.—Opinion of Court.

8th. Does not state a cause of action.

9th. Does not state facts showing negligence on part of defendant.

10. Is vague, indefinite, uncertain as to the alleged road at the point where said plaintiff is alleged to have been injured.

11. Does not state facts showing that the point at which the injury occurred was upon a public highway on which the plaintiff and the public had a right to be at the the time of the alleged injury.

12. Shows negligence of plaintiff and his parents in permitting plaintiff to attempt to cross the tracks of defendant.

This demurrer was also sustained, and the plaintiff failing to allege further, final judgment was rendered in favor of the defendant and against the plaintiff, from which judgment the plaintiff below took writ of error to this court.

The other facts in the case are stated in the opinion of the court.

*Fletcher & Wurts,* for Plaintiff in Error.

*John A. Henderson* and *John C. Cooper,* for Defendant in Error.

TAYLOR, C. J. (*after stating the facts.*)

The rulings of the court below upon the demurrers to the original and amended declarations, and the entry of the final judgment thereon are assigned as error.

The gist of the contention made by these demurrers is that neither of the counts of the original or amended declaration, when confessed to be true, makes out a case of legal liability against the defendant company.

There are four counts to the original declaration and two to the amended declaration, and for convenience we will refer to them as the 1st, 2nd, 3rd, 4th, 5th and 6th counts, in the order in which they appear in the accompanying statement.

The merits of the declaration involves a discussion of the following section 1 of Chapter 4071, acts of the Florida legislature of 1891: "A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotive, or cars or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." This section, as will be seen on comparison, was adopted here from the statutes of the State of Georgia; Code of Georgia (1873) §3033 (Ed. of 1895, §2321); and seems to have been originally enacted there as early as the legislative session of the years 1855 and 1856.

In the well considered case of Crawford v. Southern Railway Company, 106 Ga. 870, 33 S. E. Rep. 826, in discussing this statute, the court, quoting approvingly from Holland v. Sparks, 92 Ga. 753, 18 S. E. Rep. 990, says: "What will constitute the amount or kind of diligence which will be required as 'ordinary and reasonable,' must necessarily vary under different circumstances. It can not be measured or ascertained by any

fixed and inflexible standard, because the words just quoted are themselves relative terms, and what, under some conditions, would be ordinary and reasonable diligence might under other conditions, amount to even gross negligence. For instance, for most purposes, running a passenger train through the country at the rate of twenty-five miles an hour would be safe, prudent and proper, while to run the same train at this rate over a crossing in a crowded city would amount to wantonness. The measure of diligence due, therefore, by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances and the relations which, for the time being, the company and the person in question occupied towards each other." And again, in the same case (Crawford v. Southern Railway Co.), it is said: "Admitting, for the sake of the argument, that the general rule is that a railroad company owes no duty to the trespasser who is upon or dangerously near its track in front of a moving train, until its servants have discovered his presence there, and therefore so far as his safety is concerned, is not obliged to maintain a lookout in the direction in which the train is moving, we do not think that this could properly be held to be a uniform, fixed and invariable rule applicable alike to all cases and under all circumstances. Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. We think that such a rule could mean no more than this: taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to appre-

hend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there, until they have actually discovered that he is there. But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then it seems to us, it is the duty of the employes of the company to keep a lookout ahead of the train. * * * Suppose that a locomotive engineer knows that, in a particular locality, people and especially children, without even an implied license of the railroad company, are likely to be upon the railroad track, can he, while his train is rushing at great velocity through this locality, fail to look down the track in front of him, without being guilty of negligence relatively to a child who may be injured or killed by the locomotive? Are people, children as well as adults, likely, at least in daylight, to be very near or upon a railway track within the limits of a populous city, at points where they have no right to go upon the right of way of the company? If they are, is a man charged with the running and control of a railroad train * * * under no duty, relatively to such people, when his train is running through such a city, either to slacken its speed or to look ahead of his engine? These are questions which we feel sure no court can, as mere matters of law, decide in the negative." This construction thus put upon this statutory phrase, "all ordinary and reasonable care and diligence," the absence of which in cases of personal injury by railway companies fastens them with legal liability, is consonant with the general definition of negligence as entertained by many of the courts and by eminent textwriters. Thus in Railroad Company v. Jones, 95 U. S. 439, it is defined as follows: "Negligence is the failure to

do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done. The essence of the fault may lie in omission or commission. The duty is dictated and measured by the exigencies of the occasion." The latter clause of this definition the writer would amend as follows: The duty is dictated and measured by the exigencies of the occasion, as they were known to exist, or should reasonably have been known or expected to exist, from other known and existent facts and circumstances, by the party charged with default. Kay v. Penna. R.R.Co. 65 Pa. St. 269, S. C. 3 Am. Rep. 628; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. Rep. 619; Young v. Clark, 16 Utah 42, 50 Pac. Rep. 832; Blankenship v. Ches. & O. Ry. Co. 94 Va. 449, 27 S. E. Rep. 20; 2 Shearman & Redfield on Neg. (5th. ed) §484; Florida Central & Peninsular R. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558; Mitchell v. Boston & Maine R. R. 68 N. H. 96, 34 Atl. Rep. 674; Dublin, Wicklow & Wexford Ry. Co. v. Slattery, L. R. 3 App. Cas. 1155. Of course we do not wish to be understood, in what has been said touching the provisions of our statute quoted above, as holding that in any and all cases and under any and all circumstances such companies are to be held only to the exercise of *ordinary* care in the narrowest and most confined sense of the term "ordinary;" but our meaning is that such companies in every case falling within the purview of this statute are bound to exercise all ordinary and reasonable care and diligence strictly commensurate with the exigencies of the occasion and demanded by the relationship that it bears for the time being to the party in question. Thus it is generally held that to passengers on its trains such com-

panies are due the highest degree of care. The word "highest" is the superlative in comparisons. When the care due from them to their passengers is held up in comparison to that due to a trespasser on their tracks, or to one of their conductors or brakemen, or to a tramp stealing his passage, it may properly be termed "highest;" and the purpose of this statute is not to abrogate these established phrases expressive of comparative degree of care due in varying cases to persons occuping different relations to the company and surrounded by varying circumstances and conditions, but its meaning is that in order to fulfill the measure of "all ordinary and reasonable care and diligence" in the particular case of a passenger the care ordinarily demanded towards passengers, which is the highest degree of care, strictly and reasonably commensurate with his relationship as such to the company and with the circumstances of the situation must be observed; in that of a trespasser on its tracks all the care and diligence ordinarily and reasonably commensurate with *his* particular relationship to the company and with the circumstances of the situation, whenever under a duty to him, though it is a different kind of care, and may properly be said to be much lower in degree to that due to the passenger, and so on in all the varying cases as they may occur.

Applying these principles to the several counts of the declaration, we think that the first count states a case calling for a defence, and submissible to a jury. Conceding that its allegations are insufficient to show the existence of a *public crossing* of its tracks at the point of the alleged injury, in the broadest sense of the term "pubic crossing," entitling the public of right generally to go there, yet it does definitely allege that the defendant itself maintained an open roadway into its yard and

28　　　　　SUPREME COURT.　　　[43rd Fla.

Morris v. Fla. Central & Peninsular R. R. Co.—Opinion of Court.

across its tracks for the use of all persons receiving or delivering freight from or to it, which is equivalent to an allegation of an express invitation by the defendant to all persons receiving or delivering freight to go there, and that all such persons could lawfully and rightfully go there; and ,without giving his age, it also alleges that the plaintiff was lawfully there. Under these circumstances, admitted by the demurrer to be true, it was the duty of the company, dictated by this these alleged facts and circumstances, to use all ordinary and reasonable care in moving its cars about such crossing to avoid injury to persons thus invited there and who might reasonably have been expected to be there. One of such precautions, at least, under the circumstances, was to give the ordinary signals of warning of the approach of its cars which it alleges was not done; and it is also alleged that it negligently pushed its cars back upon the plaintiff with great speed.

The second count of the declaration, without alleging plaintiff's age, follows the approved form as set out in 2 Chitty on Pleading (16th Am. ed.) 576 and is, we think, not subject to demurrer. Contributory negligence, if any, on the part of the plaintiff in such cases need not be expressly negatived in his declaration, but is matter of affirmative defence. This was true before the enactment of section 2 of said Chapter 4071, acts of 1891, and since the adoption of this statute, that makes contributory negligence only a partial defence, the rule of pleading applies with even greater force.

What is said of the second count applies substantially also to the third count.

Conceding that the fourth count does not sufficiently allege the existence at the place of the injury of a public crossing of the defendant's tracks, yet we think

it states a case for the submission to a jury on the ques-
tion as to whether the defendant company used all ordi-
nary and reasonable care and diligence called for, de-
manded and dictated by the exigences of the occasion
as they are alleged to have existed. The count in ques-
tion alleges in substance that the defendant maintained
its tracks and switchyard in the city of Jacksonvillle in
close proximity to Bay street of said city; that it kept
and mantained an opening or roadway, forty feet in
width, from Bay street into its yard and across its tracks.
What were the uses or purposes for which this roadway
was kept or maintained are not alleged, but its existence
is clearly stated; that the plaintiff, without fault or negli-
gence on the part of his parents, and without their
knowledge, he being of the age of only three years and
four months, wandered into said yard through said open-
ing or roadway, and while playing on the crossing,
unconscious of his danger, the defendant by a "kicking
switch," and without any signal or warning, and with-
out any brakeman being on the rear end of the cars, or
at said crossing violently backed its cars over him, in-
flicting the severe injuries alleged. There is no allegation
that the defendant inflicted the injury after discovering
the plaintiff, or that it was wantonly or purposely done.
Under these circumstances it presents a question for a
jury to determine whether, in view of all the surrounding
facts and circumstances, such as that the defendant's
switch yard was located in a populous city like Jackson-
ville, that it maintained into said yard and across its
tracks an open roadway or driveway leading out to the
thoroughfare called Bay street in said city, of the width
of an ordinary street, it was reasonable for the defendant
and its servants to anticipate that persons would in all
probability, at some time or other, wander into its yard

and be there exposed to danger, and thus anticipating, whether it was in the exercise of all ordinary and reasonable care and diligence, commensurate with the exigencies of the occasion in not keeping a barrier or guard of some kind at said opening, or if so, in kicking back cars across the entrance of said roadway into said yard without signals of warning, and without having a brakeman on the rear of said cars, and without having said cars under the control of either a brakeman or an engine when propelled backward at great speed.

What is here said of the fourth count applies with greater emphasis to the allegations of the fifth and sixth counts.

It follows from what has been said, that the court below erred in sustaining the two demurrers to the original and amended declaration and in the entry of the final judgment thereon against the plaintiff. It is therefore ordered that the judgment of the court be reversed with directions to overrule the demurrers to the original and amended declaration, and for such further proceedings as may be consonant with law.