# Wytheville.

## CHESAPEAKE & OHIO RAILWAY CO. v. RODGERS' ADMINISTRATRIX.

### June 12, 1902.

1. EVIDENCE—*Irrelevant—Refusal to Strike Out—Instructions to Disregard—Railroads—Signals.*—In an action against a railroad company to recover damages for killing a person while walking on defendant's track, evidence of such person's knowledge of signals intended solely to secure the safety of persons and property on the trains of the defendant is impertinent, and should be excluded. The error in admitting such evidence, or in refusing to strike it out, is not cured by instructing the jury that if they believe the signals were for the use and guidance of the employees of the defendant, and not for the public, then the deceased could not rely on them.

2. INSTRUCTIONS—*Form—Negligence and Contributory Negligence.*—Where the negligence of the defendant and the contributory negligence of the plaintiff are material elements of a case, the better practice is to state the relative duties of the plaintiff and the defendant in the same instruction, for, although instructions are to be read together, if the duties are stated separately in different instructions, some concluding with directions to find for the plaintiff in one view of the case, and others to find for the defendant in another view, the tendency is to confuse the jury.

3. RAILROADS—*Walking on Track—Look Out—Negligence.*—It is the duty of a person walking on a railroad track to listen and keep a constant lookout for approaching trains in order to avoid danger to himself, and the necessity for doing so is not relieved by the negligence, if any, of the railroad company or its servants.

4. INSTRUCTIONS—*Contributory Negligence—Different Aspects.*—If, under the evidence, a plaintiff's contributory negligence may have consisted either in going upon a trestle, or in the failure to exercise

Statement.

due care after getting thereon, an instruction which limits it to the former is erroneous.

5. RAILROADS—*Trespassers—Licensees—Foresight—Frequented Points*—Although a railroad company ordinarily owes no duty of foresight to trespassers on its track, still it is the duty of the company to use reasonable care to discover and not to injure persons (whether trespassers or licensees) whom it may reasonably expect to be on its track at a point which it knows has been, for years, and is still in the constant and daily use as a walkway of a large number of persons in that vicinity.

6. INSTRUCTIONS—*Fully Instructed.*—It is not error to refuse instructions on points on which the jury have been already sufficiently instructed.

7. DEATH BY WRONGFUL ACT—*Elements of Damage—Mental Anguish.*—In ascertaining the damages to be recovered by a wife for the wrongful death of her husband, the jury should consider all of the surrounding circumstances shown in evidence, the mental ana physical anguish of the deceased, the mental anguish of the wife, the loss of the solace and comfort growing out of the husband's death, and the business habits and earning capacity of the husband as affecting his capacity to earn a livelihood for his family.

8. CONTRIBUTORY NEGLIGENCE—*Discovery—Reasonable Care.*—The defendant, under the evidence in this case, is liable for the injury inflicted on the plaintiff, notwithstanding the latter's contributory negligence, if, by the exercise of reasonable care, it could have discovered and avoided such injury.

9. INSTRUCTIONS—*Evidence to Support.*—It is error to give an instruction when there is no evidence tending to support it.

Error to a judgment of the Circuit Court of the city of Richmond, rendered July 16, 1901, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

Instruction No. 5, given at the instance of the plaintiff in the court below, and which tells the jury what elements of damage they might consider in making up the amount of their verdict, if they found for the plaintiff, was as follows:

"If the jury believe from the evidence under the instruction

of the court that the plaintiff is entitled to recover in this case, then in fixing the damages which she ought to recover, the jury should take into consideration all of the circumstances surrounding the case, so far as these are shown by the evidence, such as the circumstances attending the injury, the mental and physical anguish of the deceased, the mental anguish of the plaintiff, the loss of the solace and comfort growing out of the death of her husband, the business habits and earning capacity of the deceased as affecting his capacity to earn a livelihood for his family, and then give the plaintiff such damages as they, the jury, believe from the evidence she has sustained, provided that such damages do not exceed $10,000, the amount claimed in the declaration."

*H. T. Wickham* and *Henry Taylor, Jr.,* for the plaintiff in error.

*Sands & Sands* and *F. W. Christian,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the widow and administratrix of Thomas W. Rogers, dec'd, against the C. & O. Rwy. Co., to recover damages for the alleged negligent killing of the plaintiff's intestate while crossing a certain bridge or trestle of the defendant company, situated a short distance below the city of Richmond.

It appears that Thomas W. Rogers was employed by the Virginia-Carolina Chemical Company, and that in going to and from his work he, with others working in that vicinity, but living on Church Hill, in the city of Richmond, was accustomed, morning and evening, to pass over the bridge or trestle of the defendant company, which extends from Nicholson street to Church Hill, a distance of about thirteen hundred feet; and

varies in height, being some twenty-five or thirty feet from the ground at the highest point. This elevated track is supported by bents about twelve feet apart, and at each bent there is what is called a "cap sill," which extends out on both sides of the structure between two and three feet. There is no plank or walkway on any part of this structure—nothing but the ties, a few inches apart, on which a person can walk. At each end of this trestle is a warning board placed, with the following large conspicuous letters thereon: *"Caution. Keep off the bridge."* These warning boards are so placed as to be plainly in view of every person who approaches the structure with the intention of crossing. Below this structure, and close beside it, there is a lower trestle, which comes from the gas-house on an ascending grade to a point east of Nicholson street, where this lower track joins the upper one. Near the Fulton end of the bridge there are signals placed, which control the running of trains over these trestles. These signals are for the safe running of the trains, and not for the information of the public, and are worked from a tower several squares distant, and have to be changed back and forth as circumstances may require. On the night of January 31, 1901, between the hours of 8:30 and 9:00 o'clock P. M., Rogers met his death. He had been engaged at the Chemical Works several hours overtime, and was on his way home with a companion. The engine which ran over and killed Rogers and his companion was going in the same direction they were, and was running with the tender in front. The point where the men were run over is about three hundred and sixty feet from Gillies creek. There was also on the trestle, at or near Gillies creek, a colored man, going in the same direction as Rogers. As the engine approached, this colored man got out on a "cap sill," and thus saved himself. These cap sills appear, from the evidence, to be places of safety, under such circumstances, and available to persons situated as Rogers was. It appears that when the plaintiff's intestate approached the upper

trestle over which he was about to cross that there was exhibited at that point a *"stop"* signal, which indicated that over the lower trestle a train was expected, and that trains over the upper trestle were blocked; that a few minutes after Rogers started over the upper trestle the signal was changed from the lower to the upper trestle, giving the right of way to trains over the latter, and that almost immediately the engine and tender came at a rapid speed over the upper trestle. It appears that the night of the accident was unusually clear and bright; that it was possible to see a long distance. The fact is established by the evidence that notwithstanding the dangerous character of this structure as a walkway, and the conspicuous warning constantly displayed cautioning persons to keep off the bridge, it had been constantly used for some years by numerous persons working at the Chemical Works, and in that vicinity; and that this habitual use of the trestle as a walkway was well known to the defendant company. These are the salient facts which the evidence tends to prove.

The trial in the Circuit Court resulted in a verdict of $4,000 for the plaintiff, which the court declined to set aside, and we are asked to review and reverse that judgment.

The first error assigned is the action of the court in admitting as evidence the following question and answer thereto by a witness introduced on behalf of the plaintiff:

*"State whether or not you know that Mr. Rogers knew or was informed about the signals at that place?"* To which question the witness made the following answer: *"I think he did know, because I have heard him (we have talked as we went over about the different signals) say that track had the signal, or this car had the signal, and we would have safety in going over. I think he did know about it."*

This evidence was not pertinent, and should have been excluded. Its admission was calculated to mislead the jury, and make the impression upon their minds that if Rogers knew when

he went on the trestle that the signal was set to prevent trains from going thereon, he might rely on this fact as a safeguard while crossing the bridge. The signals were not for the benefit of the public, but were intended to secure the safety of persons and property on the trains of the defendant, and had to be changed as often as it became necessary to accomplish those purposes. In the discharge of this primary duty to those on its trains, the defendant could not be delayed in its use of the signals by the consideration that some one wrongfully on its track might be thereby misled.

The error in admitting this evidence was not cured by the subsequent instruction telling the jury that if they believe the signals were for the use and guidance of the employees of the company, and not for the benefit of the public, then Rogers could not rely on them. The action of the court in refusing to strike out this impertinent evidence, and, at the same time, giving the instruction mentioned, was calculated to confuse the jury, and mislead them to the prejudice of the defendant.

The plaintiff asked for five instructions, which were given. The defendant asked for six instructions—three of which were refused, two modified and given, and one given as asked. The action of the court, in giving the five instructions for the plaintiff, and in refusing the instructions as asked by the defendant, is assigned as error.

Instructions 1, 2, and 4 for the plaintiff are as follows:

## No. 1.

"*The court instructs the jury that if they believe from the evidence that the defendant company knew that its right of way on the trestle in the declaration mentioned, at the point where T. W. Rogers was killed, was constantly used as a footway by hundreds of men and children, passing over it daily and at all hours, its servants were charged with notice that it was so used, and whether the plaintiff's intestate so using it was a trespasser*

or licensee, the railroad company could not, without fault, neglect to keep a reasonable lookout for persons upon the trestle, and if the jury further believe from the evidence that said Rogers was so passing over said trestle, as charged in the declaration, that then the court further instructs the jury that it was the duty of the servants of the defendant company to use ordinary care in keeping a lookout to discover persons upon the trestle, and if the jury further believe that if they had done so they would have discovered Rogers' danger in time to avoid any injury to him, and said Rogers was killed in consequence of such neglect of the defendant, then they must find for the plaintiff."

### No. 2.

"The court further instructs the jury that if they believe from the evidence that the defendant company knew that hundreds of men and children were accustomed to pass over and along their trestle, where T. W. Rogers was killed, daily, that it was the duty of said company and their servants to exercise reasonable care to discover, and not to injure, persons whom they might reasonably expect to be on the trestle at that point, and if the said servants of the defendant company in charge of the engine did not do all they could consistently with their own safety to avoid the injury to said Rogers after his danger was known, or could have been discovered by the exercise of ordinary care in keeping a lookout for persons at that point, at the time he was killed, they must find for the plaintiff, although the said plaintiff was guilty of contributory negligence in going upon the trestle."

"But in connection with these two instructions, No. 1 and No. 2, the jury are instructed that if they believe from the evidence that the accident occurred between 8:30 and 9:00 o'clock at night, and that it was not customary or usual for persons to be so passing and repassing at that hour of the night, then the servants of the defendant company were not required to anticipate the presence of persons upon the trestle."

## No. 4.

"*The court instructs the jury that although the plaintiff may have been guilty of contributory negligence, and although the negligence may have in fact contributed to the accident, yet if the jury believe from the evidence that the defendant's servants or either of them could, in the result, that is, after they or either of them discovered, or by the exercise of ordinary care, could have discovered Rogers' peril in time to have avoided the mischief which happened, Rogers' negligence in going upon said trestle will not excuse said company, and they must find for the plaintiff.*"

Instructions 1 and 2 are objected to upon the ground that there is no evidence showing that hundreds of men and children were accustomed to pass daily over the trestle. The evidence shows that a great many people, including boys, used the trestle as a walkway every day. It would be better for the instructions to state the facts as shown by the evidence upon which they are predicated. We do not, however, see that the language here objected to was such a departure from the fact as to have operated to the prejudice of the defendant.

Instructions 1, 2 and 4 are objected to upon the ground that each of said instructions directed the jury to find for the plaintiff if they believed that the defendant was guilty of negligence in not keeping a proper lookout, without making said charge dependent in any way upon the exercise by Rogers of the care required of him; that these instructions, in effect, said to the jury that if the defendant was negligent, their verdict should be for the plaintiff; it being contended that this error is not cured by an instruction given for the defendant which states the law touching the care required of Rogers in keeping a reasonable lookout for his own protection. Rogers was bound to take precautions for his own safety, and the necessity for his doing so was not relieved by the negligence, if there was any, on the

part of the company. It was his duty to listen and keep a constant lookout for approaching trains in order to avoid danger to himself. *Southern R. Co.* v. *Bruce*, 97 Va. 92. It is the better practice, in a case like this, that instructions, which lay down the law with respect to the duty of the defendant to keep a lookout to avoid injuring persons on its track, should not conclude with a direction to the jury to find for the plaintiff, unless they also contain a statement of the corresponding duty of the plaintiff to exercise reasonable care for his own safety. Although instructions are to be read together, a subsequent instruction setting forth the care required of the plaintiff, is apparently in conflict with the first, and is calculated to confuse the jury. The added instruction given in connection with 1 and 2 lends force to the idea that those instructions were intended as a complete statement of the law of the case, and indicate that they were to be read independently of any other.

Instructions 1, 2 and 4 are also defective in that they limit the negligence of Rogers to going upon the trestle; whereas they should have been broad enough to cover, not only his negligence in going upon said trestle, but in failing to exercise due care while on the same. The proximate cause of the accident may have been the failure of Rogers, while on the trestle, to keep a proper lookout for approaching trains, and in failing to get out on a "cap sill" for safety. Rogers could have been fully advised of the approach of the engine and tender, with opportunity to get out of the way, and yet, under these instructions as given, there could be a recovery.

Instruction No. 3 is objected to upon the ground that it devolves upon the defendant company the duty of using reasonable care to discover and to avoid injuring trespassers upon its tracks. In the case of a trespasser the instruction would not state the law correctly. It is not the duty of the employees of a railroad company, operating its trains, to use reasonable care to discover and to avoid injuring persons trespassing upon its tracks.

*Seaboard &c. R. Co.* v. *Joyner*, 92 Va. 354; *Tucker* v. *N. &
W. R. Co.*, 92 Va. 549.

The instruction under consideration, however, when applied
to the facts of the case at bar, is free from objection. The un-
contradicted evidence shows that this trestle or bridge had been
in constant and daily use as a walkway for some years by a
large number of persons in that vicinity, and that this use was
well known to the company and its employees. Under these
circumstances, it is immaterial whether Rogers was a trespasser
or licensee, for in either case it was the duty of the company to
use reasonable care to discover and not to injure persons whom
(whether they were trespassers or licensees) it might reasonably
expect to be on its tracks at that point, and, as it owed this duty
alike to licensees and trespassers, under the peculiar facts of this
case, it was not necessary to give instructions to the jury deter-
mining whether the plaintiff was a licensee or a trespasser.
*Blankenship* v. *C. & O. Rwy. Co.*, 94 Va. 449.

Instruction No. 5, which told the jury what elements of dam-
age they might consider in making up the amount of their ver-
dict, if they ascertained that the plaintiff was entitled to recover,
was not to the prejudice of the defendant, and the objection to
it was properly overruled.

Instruction "A," asked for by the defendant company, told
the jury that if they believed from the evidence that, at the
time of the accident, the defendant had, near the eastern end
of its bridge or trestle, a warning board cautioning persons to
keep off the bridge, that then Rogers was a trespasser thereon.
This instruction was properly rejected, because it was immaterial
whether Rogers was a trespasser or a licensee; the duty and
responsibility of the company, under the circumstances dis-
closed, being the same in either event. This subject has al-
ready been sufficiently considered in connection with the plain-
tiff's Instruction No. 3, and it is unnecessary to repeat here
what has been there said.

Instructions "B" and "C" were properly refused because they were covered by other instructions. "B," in the same words, by Instruction "D," and "C," in substantially the same words, by the addition to Instructions 1 and 2 given for the plaintiff.

Instruction "D," as asked for, was as follows:

*"The court instructs the jury that the defendant did not owe the plaintiff's decedent the duty of blowing its whistle, ringing its bell, running its engines at any particular rate of speed, or having a light on said engines or tender, and if the jury believe from the evidence that the signals near Denny street were for the use and guidance of the employees of the company in running trains and engines over said bridge or trestle, and were not for the benefit or information of the public, no negligence can be imputed to the defendant for changing its signals, and running its engines across the eastern or upper trestle or bridge at the time it did. And if the jury believe from the evidence that the servants of the defendant in charge of the engine could not, in the exercise of reasonable care under the circumstances surrounding them at the time, have known of the danger to the plaintiff's decedent in time to avoid the accident, they must find for the defendant."*

The following addition, over the objection of the defendant, was made by the court to this instruction:

*"But the jury are further instructed that if they believe from the evidence that the servants of the defendant in charge of the engine could, in the exercise of reasonable care under the circumstances surrounding them at the time, by having a proper lookout, have discovered the danger of the plaintiff's intestate in time to avoid the accident, they must find for the plaintiff."*

If the employees of the defendant company could, in the exercise of reasonable care, have discovered the danger of the plaintiff's intestate in time to avoid the accident, it was their duty to do so, and a negligent failure to discharge that duty would have subjected the defendant to liability for the damage

resulting. Instruction "D," as asked, having told the jury that if they believed from the evidence that the servants of the defendant, in charge of the engine, could not, in the exercise of reasonable care, have known of the danger to the deceased in time to avoid the accident, they must find for the defendant; it was proper to make the addition telling the jury that if, on the other hand, they should believe from the evidence that, in the exercise of reasonable care, the danger of plaintiff's intestate could have been discovered in time to save him, they must find for the plaintiff.

Instruction "E" is not called in question, having been given as asked by the defendant.

Instruction "F," as asked, was as follows:

*"The court instructs the jury that it was the duty of Thomas W. Rogers, while on the trestle or bridge, to listen and keep a constant lookout in each direction for approaching trains, and if the jury believe from the evidence that had he been thus observant and watchful he could have known of the approach of the engine, and could have avoided the same by getting out on a cap sill, they must find for the defendant, even though they may believe that the defendant was negligent, as charged in the declaration."*

The following addition was made by the court to this instruction over the objection of the defendant:

*"Unless the servant of the defendant in charge of the locomotive, after knowing of such neglect of Rogers, could have averted the accident, in which event they should find for the plaintiff."*

Instruction "F" should have been given as asked. The addition thereto is free from objection as an abstract proposition of law. In this case, however, it was not pertinent, and should have been rejected, for the reason that there was no evidence to support it. On the contrary, it is an established fact in the case, as to which there is no contradiction, that the servants of the defendant company in charge of the locomotive did not know

that Rogers was on the trestle, or had been killed, until after the engine returned from the Seventeenth-street yard, and yet the addition to Instruction "F" tells the jury to find for the plaintiff, if they believe that the servant of the defendant in charge of the locomotive, *after knowing of such neglect of Rogers*, could have averted the accident; thus assuming a fact to exist that the evidence showed had no existence. It is well settled that it is error to give an instruction based upon a fact that there is no evidence tending to prove.

It follows from what has been said that the judgment complained of must be reversed, the verdict set aside, and the cause. remanded for a new trial.

*Reversed.*