# Richmond.

## Chesapeake and Ohio Railway Co. v. Pew.

### March 11, 1909.

1. Statutes—*Foreign Statute—Construction—Presumption.*—Where a foreign statute which has received the construction of the State from which it comes, has been incorporated into the statute law of this State, it will be presumed that the legislature likewise adopted the construction placed upon the statute by the courts of the foreign State.

2. Carriers—*Initial Carrier—Acts on Its Own Line—Liable as at Common Law.*—The liability of an initial carrier of goods under section 1294-c (24) of the Code of 1904, with respect to acts done on its own line, remains as at common law, and is that of an insurer.

3. Carriers—*Restricting Liability—Code, Sec. 1294·c (24)—Insurers.*—Under section 1294c (24) of the Code of 1904, contracts exempting common carriers from their common law liability, either with respect to the amount or degree of their liability as insurers, are invalid.

4. Statutes—*Code, 1904—Section Headings Not Law.*—The titles in black face type found at the head of the sections of the Code of 1904 were placed there for convenience by the compiler of the Code, and are no part of the statutes.

5. Statutes—*Construction—Titles of Acts—Acts 1902-3-4, pp. 388, 968.*—The title of an act is frequently of value in the exposition of statutes, as a guide to the legislative intent, but there is nothing in the title of the acts under consideration (Acts 1902-3-4, pp. 388, 968) to divert the court from a meaning plainly to be gathered from the history of the legislation and in harmony with the manifest public policy of the State.

6. Carriers—*Liabilities for Goods—Insurer—Restricting · Liability—Code (1904), Sec. 1294c (24).*—Under section 1294-c (24) of the Code of 1904, the liability of a common carrier of goods with respect to goods lost on its own line is that of an insurer except against losses occasioned by the act of God, or a public enemy,

or of the shipper, or the nature or inherent qualities of the goods shipped, and a contract with a common carrier whereby, in consideration of a reduced rate, a shipper agrees to accept an agreed sum, less than the true value of goods lost, is invalid.

Error to a judgment of the Circuit Court of the city of Williamsburg and the county of James City in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Affirmed.*

This action was brought to recover damages to two car loads of cattle, some of which were killed and others injured, while in transit over the defendant's road.   The cattle were shipped from Columbia, Virginia, to Grove, Virginia; both points being on defendant's railroad.   There was no connecting carrier. The cattle were killed or injured in a wreck causing the derailment of the cars in which they were shipped, and it was contended, among other things, that the wreck was not occasioned by any negligence on the part of the company, and that the company was protected by its contract with the shipper, as the statute only prohibited contracts against its negligence.

The defendant stated the following grounds of defense:

1.  That injury and loss was not occasioned by any negligence of the railway company; (2) that the injury and loss, if any, proceeded from and was due to inevitable accident, for which the railway company is no way liable; (3) that the plaintiff refused to receive such of the cattle embraced in said shipment to M. B. Garnett as were not killed; (4) that the damages sought by the plaintiff, if any, are beyond the amount which might be recovered, even if any liability might be imposed upon the defendant; (5) that the defendant is not answerable in damages in any respect to the plaintiff.

*R. G. Bickford* and *S. O. Bland,* for the plaintiff in error.

*Garnett & Pollard, N. L. Henly* and *Braxton, Williams & Eggleston,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of trespass on the case to recover damages arising out of an intrastate shipment of cattle, the property of the defendant in error, J. N. Pew, over the road of the plaintiff in error, the Chesapeake and Ohio Railway Company, the initial carrier. Some of the cattle were killed and others injured in course of transportation under circumstances which it is alleged render the carrier liable for the damage sustained.

To a judgment against the company for the value of the cattle, this writ of error was awarded.

The principal assignment of error draws in question the ruling of the circuit court denying the validity of certain stipulations contained in the bill of lading, whereby, in consideration of a reduced rate for transportation of the cattle, the company seeks to limit the measure of its duty as a common carrier, and the shipper obligates himself to accept an agreed value, less than the true value of the cattle, in the event of loss for which the carrier is responsible.

The company insists that in no event can it be held answerable in damages under a correct construction of section 129·' (24), Va. Code 1904, unless the plaintiff proves that the injury to the cattle resulted from its negligence; and, in that event, that the amount of the recovery must be limited to the agreed value of the cattle.

The trial court resolved both propositions against the contention of the company, instructing the jury that, if they believed from the evidence that the defendant company received the cattle for transportation, and that they were killed, lost or destroyed, they must find for the plaintiff, unless such killing, loss or destruction was due to the act of God, or the public enemy, or the peculiar nature or inherent qualities of the cattle, or to the act or fault of the shipper.

The court, moreover, told the jury, that the stipulation in the bill of lading limiting the value of the cattle, in case of loss, to an amount less than their true value, was invalid.

The correctness of this ruling depends upon the proper construction of section 1294c (24).

The first sentence of the first paragraph of that section renders the initial carrier, receiving goods for transportation, liable for any loss or damage caused by his negligence or the negligence of any connecting carrier to which such property may be delivered, or over whose lines such property may pass; and the fact of loss or damage in such case shall be *prima facie* evidence of negligence. This provision, except to the extent to which it undertakes to make the initial carrier liable for loss or damage occurring on the lines of connecting carriers, is simply declaratory of the common law. The next provision allows the initial carrier to recover from the connecting carrier the amount of any loss, damage or injury it may be required to pay to the owner of such property on account of the latter's negligence. Then follows the provision upon which the recovery in this case is founded, namely, that "no contract, receipt, rule or regulation shall exempt any such carrier, railroad or transportation company from the liability of a common carrier which would exist had no contract been made or entered into."

This enactment is a composite piece of legislation. The first sentence of the first paragraph was taken from the Missouri statute (Laws of Missouri, 1879, p. 171, Revised Stat. of Missouri, 1889, sec. 994), while the concluding sentence of the paragraph was adopted from the Iowa statute (Code of Iowa, 1897, sec. 2074).

It is a familiar rule in the interpretation of statutes, that where a foreign statute, which has received the construction of the courts of the State from which it comes, has been incorporated into the statute law of this State, it will be presumed that the legislature likewise adopted the construction placed upon the statute by the courts of the foreign State. *Doswell* v. *Buchanan*, 3 Leigh, 394, 410, 23 Am. Dec. 280; *Danville* v.

*Pace,* 25 Gratt. 1, 5, 18 Am. Rep. 663; *N. & W. Ry. Co.* v. *Cheatwood's Admr.,* 103 Va. 356, 367, 49 S. E. 489.

Applying that rule to the interpretation of the statute in question, we find that the Missouri courts hold, that the liability of an initial carrier, with respect to acts done on its own line, remains as at common law. *Hurst* v. *St. Louis, &c. Ry. Co.,* 117 Mo. App. 25, 94 S. W. 797; *Ball* v. *Wabash,* 83 Mo. 574; *McCann* v. *Eddy,* 133 Mo. 59, 33 S. W. 71, 35 L. R. A. 110.

So, also, as to the concluding sentence of the first paragraph of section 1294c (24), taken from the Code of Iowa, the courts of that State have uniformly held invalid contracts exempting common carriers from their common law liability, either with respect to the amount or degree of their liability as insurers. *McDaniel* v. *Chicago & N. W. R. Co.,* 24 Iowa, 412; *McCoy* v. *K. & D. M. R. Co.,* 44 Iowa, 424; *McCune* v. *B. C. R. & N. Ry. Co.,* 52 Iowa, 600, 3 N. W. 615; *Lucas* v. *Ry. Co.,* 112 Iowa, 594, 84 N. W. 673.

In considering this subject, Hutchinson on Carriers (3rd ed.), section 237c, observes: "In some of the States, however, it has been deemed contrary to the true policy of the State to permit the carrier to limit his common law liability by any contract whatever. Prohibition of such contracts has been declared by statute in Kansas, Iowa, Texas, while in Nebraska and Kentucky they are forbidden by the Constitution."

See also a full and valuable discussion by Judge Freeman of "limitation of carrier's liability in bills of lading," in notes to *Chicago, etc. Ry. Co.* v. *Calumet, etc. Farm,* 82 Am. St. Rep. 68, 74, *et seq.* At pp. 129, 130, the learned annotator says: "In a few of the States this has been carried to the extent of prohibiting a common carrier from in any way limiting his liability as it exists at common law. Such prohibitions are to be found in the Constitutions of Kentucky and Nebraska, and by statute in Iowa and Texas."

The Missouri cases, *supra,* show that the liability of the initial carrier for acts done on its own line is that of an in-

surer, as at common law; and that the object of the Missouri statute, corresponding to the first sentence of the first paragraph of section 1294c (24), is to apply the English rule of liability to the initial carrier, where there is an initial carrier and a connecting carrier, and does not affect the liability of a carrier where the transportation is wholly over its own line.

It follows, therefore, that the first sentence of the section has no application to the case in judgment, which is controlled by the concluding sentence of the first paragraph, as interpreted by the decisions of the Iowa courts to which reference has been made.

Nor is this view of the enactment influenced by the title in black-face type found at the head of the section. That title was inserted by the compiler of the Code as matter of convenience.

The original act, which is known as "The Claytor Act," was passed May 16, 1903, under the title, "An act prescribing the liability of common carriers, railroads or transportation companies for any loss, damage or injury to property caused by its negligence or the negligence of any other common carrier, railroad or transportation company, to which said property may be delivered; or over whose line such property may pass." Acts 1902-3-4, p. 388. The "Claytor Act" was carried into the Code by the compiler as section 1294l. On January 18, 1904, however, the legislature passed a new act, entitled "An act concerning public corporations." That statute re-enacts "The Claytor Act" and is embodied in Va. Code, 1904, as section 1294c (24), Acts 1902-3-4, p. 968.

We are not unmindful of the fact that the title of an act is not infrequently of value in the exposition of statutes, as a guide to the intention of the legislature; but there is nothing in the title to the present enactment to divert us from a meaning plainly to be gathered from the history of the legislation, and more especially as our conclusion is in harmony with the manifest public policy of the State.

Having thus reached the conclusion that the case comes within the control of the provision in section 1294c (24), that "no contract, receipt, rule, or regulation shall exempt any such common carrier, railroad or transportation company from the liability of a common carrier which would exist had no contract been made or entered into," the plaintiff in error is necessarily relegated to its common law liability. It, therefore, only remains to inquire what the liability of a common carrier is with respect to goods delivered to him for transportation, under the doctrine of the common law, in the absence of all contract whatsoever on the subject.

That question was definitely answered in England in the year 1785, by the decision of the court of King's Bench, in the case of *Forward* v. *Pittard,* 1 Term Rep. 27. In that case the plaintiff delivered to the defendant, a common carrier, twelve pockets of hops to be carried to Andover and forwarded to Shaftsbury by the carrier's wagon. The hops were consumed by accidental fire while in transit, without negligence on the part of the defendant. Lord Mansfield delivered a notable judgment in the case, in which, among other things, he said: "The question is whether the common carrier is liable in this case of fire. It appears from all the cases for 'one hundred years back that there are events for which the carrier is liable independent of his contract. By the nature of his contract, he is liable for all due care and diligence; and for any negligence he is suable on his contract. But there is a further degree of responsibility by the custom of the realm, that is, by the common law; a carrier is in the nature of an insurer. It is laid down that he is liable for every accident, except by the act of God, or the King's enemies."

This statement of the common law rule has been followed by this court in *Murphy, Brown & Co.* v. *Staton,* 3 Munf. 239, and *Friend* v. *Woods,* 6 Gratt. 189, 192.

The recent case of *C. & O. Ry. Co.* v. *Beasley,* 104 Va. 788, 52 S. E. 566, 3 L. R. A. (N. S.) 183, arose under section

1294c (25), or rather under the corresponding section (1296) of the Code of 1887; and the court held that "a contract with a common carrier, whereby, in consideration of a reduced rate, a shipper agrees to accept an agreed value, less than the true value, of goods lost by the negligence of the carrier, is invalid. * * *"

Our conclusion is that, so far as the rights and liability of an initial carrier with respect to goods lost on its own line is concerned, there is no difference in legal effect between liability arising under the last sentence of the first paragraph of section 1294c (24) and under 1294c (25)—except, of course, that liability under the latter clause is predicated on the negligence of the carrier, while under the former it is not. That is to say, a common carrier can no more exempt itself by contract from liability for loss or injury to goods committed to it for transportation in the one instance than in the other.

There are numerous minor assignments of error, which have received careful consideration, but which need not be noticed further than to observe, that the construction which we have placed on section 1294c (24) eliminates the main contentions of the plaintiff in error; that the admissible evidence in the case is plainly sufficient to sustain the finding of the jury; and that no more favorable verdict for the defendant could properly have been rendered. See *Taylor* v. *B. & O. R. Co.,* 108 Va. 817, 62 S. E. 798, 2 Va. App. 650, 651, and authorities cited.

We find no reversible error in the record, and the judgment must be affirmed.

*Affirmed.*