## Wytheville.

## SHIVELEY'S ADMINISTRATOR V. NORFOLK AND WESTERN RAILWAY COMPANY.

### June 12, 1919.

### Absent, Burks, J.

1. APPEAL AND ERROR—*New Trial—Review in Supreme Court of Appeals in Case of Successive Trials.*—In an action for death by wrongful act, the administrator of decedent sued the railroad company and recovered damages for his death. The company made a. motion to set aside that verdict, which motion was sustained and a new trial granted. Upon the new trial neither party introduced any evidence, and there was a verdict and judgment for the company. On appeal the rule in such cases is that the appellate court will look first to the record of the first trial, and if there was error in setting aside that verdict, no further inquiry will be made, but judgment will be entered by that court thereon. The appellate court will consider the whole evidence and sustain the verdict, unless it be against the law and the evidence, or without evidence.

2. RAILROADS—*Accidents on Tracks—Duty to Licensees.*—Railroad companies do not owe any duty of prevision to licensees, but must, with the facilities at hand and under the circumstances as they exist at the time, exercise reasonable care to discover and avoid injuring them. While it is not the duty of a railway company to provide additional force in order to keep a proper lookout for licensees, it is the duty of the employees of the company upon a train, considering all the surrounding circumstances, to use reasonable care to discover and not to injure any person whom they might reasonably expect to be on the track at that point.

3. CROSSINGS—*Signals—Duty to Persons Traveling Along Tracks.*—Code of 1904, section 1294d, subd. 24, requiring crossing signals to be sounded is not limited in its application to travelers along the highway intending to cross the railroad tracks at the crossing, but applies to a traveler who is killed or injured at the crossing while traveling along the railroad tracks. The statute itself expressly provides that the company shall be liable

for all damages which shall be sustained by any person by reason of the company's neglect to sound the crossing whistle.

4.  STATUTES—*Construction—Construction Placed Upon Similar Statutes of Other States Before Adoption in Virginia—Presumption.*—Where similar statutes of other States have received construction before the adoption of a like statute in Virginia, the legislature will be presumed to have adopted the same construction which it had thertofore received in the courts in those other States.

5.  CROSSINGS—*Lights and Signals—Code of 1904, sec. 1294d, subd. 24—Case at Bar.*—In the instant case the evidence fully warranted the jury in concluding that the decedent lost his life on the crossing, and that the accident was due to the negligence of the company in running its train at a crossing where pedestrians were naturally to be expected, at an excessive rate of speed on a very dark night, without proper lights, and without sounding the crossing signals which the statute (Code 1904, sec. 1294d, subd. 24) makes imperative. Statutes like this are mandatory, and are enacted for the purpose of preventing just such accidents as this, and if the disobedience thereof is the proximate cause of injury to one not guilty of contributory negligence, the company is responsible therefor.

6.  CROSSINGS—*Instruction—Ignoring Statute Law.*—In an action for death at a crossing, instructions that either ignored or controverted the imperative mandate of sec. 1294d, subd. 24, Code of 1904, requiring crossing signals, were properly refused.

7.  DIRECTING VERDICT—*Partial View of the Evidence.*—Instructions directing a verdict for the defendant upon a partial view of the evidence are erroneous.

8.  INSTRUCTIONS—*Death by Wrongful Act—Contributory Negligence.*—Where the manifest purpose of instructions was to take the case from the jury and instruct them, as matter of law, that the plaintiff was so clearly guilty of contributory negligence as to defeat his right of action, whereas that was a question which, under the facts of the case, the plaintiff had the right to have submitted to the jury, the trial court did not err in refusing to give the instructions.

9.  CROSSINGS—*Signals—Rights of Travelers.*—One upon the highway, however he may have reached it, is entitled to be warned of an approaching train by the crossing signals prescribed by statute, and if injured thereon and the proximate cause of his injury is the failure to sound such signals, and he is not guilty of contributory negligence, he is entitled to recover; and this under circumstances like those of the instant case, where there were double tracks and another train was passing over the other track at the time of the injury.

49

Error to a judgment of the Circuit Court of Appomattox county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*S. L. Ferguson,. F. C. Moon* and *W. C. Franklin,* for the plaintiff in error.

*F. S. Kirkpatrick, W. H. Mann* and *Theo. W. Reath,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

[1] W. H. Shiveley was killed on December 17, 1915, by a train of the Norfolk and Western Railway Company. His administrator sued the company, alleging that his death was caused by its negligence, and, upon the first trial, se- cured a verdict for $10,000. The company made a motion to set aside that verdict, which motion was sustained and a new trial granted. Upon the new trial neither party in- troduced any evidence, and there was a verdict and judg- ment for the company, of which the plaintiff in error is here complaining.

The rule in such cases is that the court will look first to the record of the first trial, and if there was error in set- ting aside that verdict, no further inquiry will be made, but judgment will be entered by this court thereon. Code, sec. 3484; *Humphrey's Adm'x* v. *Valley Railroad Co.,* 100 Va. 749, 42 S. E. 882; *Cardwell* v. *N. & W. Ry. Co.,* 114 Va. 500, 77 S. E. 612; *Carter* v. *Washington & Old Dom. Ry.,* 122 Va. 460, 95 S. E. 464.

The court here will consider the whole evidence and sus- tain the verdict, unless it be against the law and the evi- dence, or without evidence. *Muse* v. *Stern,* 82 Va. 35, 33

Am. St. Rep. 77; *Marshall's Adm'x* v. *Valley R. Co.,* 99 Va. 798, 34 S. E. 455; *Humphrey's Adm'x* v. *Valley R. Co., supra; Morien* v. *Norfolk, etc., Co.,* 102 Va. 622, 46 S. E. 907; *Jackson's Adm'r* v. *Wickham,* 112 Va. 128, 70 S. E. 539; *Bashford* v. *Rosenbaum,* 120 Va. 1, 90 S. E. 625; *Carter* v. *Washington & Old Dom. Ry., supra.*

The circumstances of the accident were, that the company, on a dark, rainy, drizzly night—so dark that its own witnesses said that they could not see ten feet ahead of them on account of the fog—ran its work-train backwards, according to the plaintiff's witnesses at a very high rate of speed, some thirty-five or forty miles an hour. The train consisted of an engine, tender, two cabs and two flat cars, running west, with the flat cars in front. Just before or at the time of the accident, the work-train was passed by a freight train on the south track, going east. The deceased and his companion, Price, stepped off of the south track in order to get out of the way of the freight train, and walked on until they reached the public road crossing. According to the testimony of the plaintiff's witness, Price, the decedent was struck while he was in the public road, and just as he (the witness) stepped off the track as they separated, each to go to his own home. According to the company's witnesses, the accident occurred just west of the crossing, after the decedent had left the public road and passed a cattle guard, which he crossed over on his way. There is a conflict of testimony as to the sounding of the crossing signals. The plaintiff's witness, Price, testified clearly and distinctly that there was no crossing whistle blown, and that the only light was that held by a brakeman who stood on the second car, whose body was between his lantern and the front end of the flat car which struck decedent, that he saw this light just as the train rushed by him, and that the decedent and he were both carefully looking and listening for trains on both tracks, but that they failed either to see

or to hear this one until the accident occurred. The defendant's witnesses testify that there were two brakemen on the front car, both waving their lights and giving alarm signals. It is also proved that the track was habitually used between Pamplin and the point beyond the crossing at which the decedent lost his life by him and by other pedestrians going to and fro, by day and night, in such numbers as to justify the conclusion that the decedent was a licensee. There is other testimony than that recited, but nothing to inhibit the inferences adverse to the company which the jury drew therefrom, and much to support their verdict.

[2] The duty which railroad companies owe to licensees is succinctly stated in *Washington & Old Dominion Railway* v. *Ward's Adm'r*, 119 Va. 341, 89 S. E. 143, thus: "Railroad companies do not owe any duty of *provision* to licensees, but must, with the facilities at hand and under the circumstances as they exist at the time, exercise reasonable care to discover and avoid injuring them. *Blankenship* v. *C. & O. Ry. Co.*, 94 Va. 449, 27 S. E. 20; *C. & O. Ry. Co.* v. *Rogers*, 100 Va. 324, 333, 41 S. E. 732; *Norfolk & Western Ry. Co.* v. *Carr*, 106 Va. 511, 56 S. E. 276."

While it is not the duty of a railway company to provide additional force in order to keep a proper lookout for licensees, it is the duty of the employees of the company upon a train, considering all the surrounding circumstances, to use reasonable care to discover, and not to injure, any person whom they might reasonably expect to be on the track at that point. *C. & O. Ry. Co.* v. *Saunders' Adm'r*, 116 Va. 832, 83 S. E. 374.

The defendant, however, insists that Code, section 1294d, subdivision 24, which is the section requiring crossing signals to be sounded, has no application under the facts of this case, because the decedent was traveling along the railway tracks and not along the highway, and therefore

that failure to give these signals cannot be relied upon to sustain the charge of negligence.   This contention appears to be chiefly based upon *Hortenstein* v. *Virginia-Carolina Ry. Co.,* 102 Va. 924, 97 S. E. 1000, and this quotation therefrom:  "The section was not intended to protect all persons indiscriminately, but only those upon the highway, or who are lawfully at or near a crossing of a railroad in pursuit of their legitimate business, and intending to cross the railroad, and was not made for trespassers, or even licensees."

[3]  We think that the quotation relied upon was not intended to bear the strict construction claimed for it, and that it expressly indicates that the statute was intended to protect "those upon the highway," and in this case there is positive evidence that at the time of the accident this decedent was upon the highway crossing.   However this may be, the language of the statute itself expressly provides that the company shall be liable for all damages which shall be sustained by any person by reason of the company's neglect to sound the crossing whistle.   Similar statutes are in force in a number of States, and so far as we are informed they have never been limited in their application to travelers along the highway intending to cross the railroad tracks at such crossing, as the company's counsel so earnestly contends.

In *Toledo, Wabash, etc., R. Co.* v. *Fergusson* (1867), 42 Ill. 450, the company was held liable for killing a cow which was running at large, and had strayed upon the railroad track at a point a few yards from a highway crossing, and the actionable negligence was the failure to give the statutory signal.   The court uses this language with reference thereto:  "It is sufficient that the statute has said such failure shall give a right of action for all injuries attributable to such neglect."

The same construction has been put upon the statutes in *Lonergan* v. *Illinois Central R. Co.,* 87 Ia. 755, 49 N. W. 852, 53 N. W. 236, 17 L. R. A. 254, which holds that a person, upon the station grounds unloading corn into a railway car near the highway crossing, who is injured by failure to give the statutory signal, was entitled to recover damages from the railway company for such injuries.

[4]   See also in Kentucky, in *Wilson's Adm'r* v. *C. & O. Ry. Co.* (1905), 27 Ky. Law Rep. 778, 86 S. W. 690, citing a number of Kentucky cases to the same effect.   In Texas, likewise the statute has been so construed: *International & G. N. R. Co.* v. *Gray* (1885), 65 Tex. 32.   And the same view has been followed in that State in *Galveston, H. & S. A. Ry. Co.* v. *Garteiser,* 9 Tex. Civ. App. 456, 29 S. W. 939; *M., K. & T. Ry. Co.* v. *Taff* (1903), 31 Tex. Civ. App. 657, 74 S. W. 89.   A number of these cases were decided before this statute was adopted in Virginia, and hence the legislature will be presumed to have adopted the same construction which it had theretofore received in the courts in these other States, in acordance with the established rule which is stated in *C. & O. Ry. Co.* v. *Pew,* 109 Va. 288, 64 S. E. 35.

*Bowles* v. *C. & O. Ry. Co.,* 61 W. Va. 272, 57 S. E. 131, also sustains this construction, and holds that: "It is negligence *per se* to back a train, on a dark night, over a public railroad crossing without warning, by blowing a whistle or ringing a bell, or guard, or light on the advancing reversed car.   The company must adopt some means to warn travelers of danger, such means as will be equally efficient as the bell or whistle warning in the case of an advancing unreversed train.   The precaution must suit the circumstances and be adequate under the circumstances.   Though one reach a public crossing over a railroad by walking on the right of way between tracks, though not between the rails, this does not deprive him of the benefit of the safeguards demanded of the company for a person while cross-

ing the railroad on such public crossing. When on the crossing, he is entitled to such safeguards, no matter whence he came, or how he reached the crossing."

[5]   We are clear in our view that under the evidence the jury were fully warranted in concluding that the decedent lost his life on the crossing, and that the accident was due to the negligence of the company in running its train, at a crossing where pedestrians were naturally to be expected, at an excessive rate of speed on a very dark night, without proper lights, without sounding the crossing signals which the statute makes imperative. Statutes like this are mandatory and are enacted for the purpose of preventing just such accidents as this, and if the disobedience thereof is the proximate cause of injury to one not guilty of contributory negligence, the company is responsible therefor. *Atlantic & Danville Ry. Co.* v. *Reiger,* 95 Va. 418, 28 S. E. 590; *Simons' Adm'r* v. *Southern Ry. Co.,* 96 Va. 152, 31 S. E. 7.

[6-8]   It only remains to inquire whether any harmful error of law was committed on the trial. What we have said is sufficient to show that we think there was no error in the two instructions complained of which were given upon motion of the plaintiff. As to the nine instructions which were refused, and of which the company complains, it is sufficient to say, as to most of them, that they either ignore or controvert the imperative mandate of the statute requiring crossing signals. They are also erroneous because misleading, and especially because, with one exception, they direct a verdict for the defendant upon a partial view of the evidence, which this court has repeatedly held to be erroneous. *Southern Ry. Co.* v. *Abee's Adm'r,* 124 Va. 379, 98 S. E. 31. Neither of them presented the view that the company had not been guilty of the negligence charged, which because of the conflict in the testimony it was entitled to have presented to the jury, but ignoring this conflict they, with insistent

reiteration, urged that in any event the contributory negligence of the decedent barred any recovery. Their manifest purpose was to take the case from the jury and to instruct them, as matter of law, that the plaintiff was so clearly guilty of contributory negligence as to defeat the action, whereas that was a question which, under the facts of this case, the plaintiff had the right to have submitted to the jury.

[9] The defendant's instruction No. 9 told the jury, in substance, that the law does not presume that a highway crossed by double tracks will be used when a train is actually going over one of the tracks, and that a traveler on a railroad where it crosses the highway, while being used by a train, has no right in law to expect crossing signals to be blown for his benefit, nor a lookout on a front car, nor lights, and if the jury believe that the plaintiff was killed under such conditions, they must find for the defendant, although they may also believe that he looked and listened for trains on the track upon which he was walking and did not see or hear any approaching train. No authority is cited for this proposition, and we think it clearly unsound. One upon the highway, however he may have reached it, is entitled to be warned of an approaching train by the crossing signals prescribed by statute, and if injured thereon and the proximate cause of his injury is the failure to sound such signals, and he is not guilty of contributory negligence, he is entitled to recover; and this under circumstances like these, where there were double tracks and another train was passing over the other track at the time of the injury. The humane purpose of the statute is manifest, and it is mandatory. Other questions are raised, but as, under our view, those we have referred to are decisive, we will not prolong this opinion by any further discussion.

This court will enter here the judgment which we think the trial court should have entered on the verdict.

*Reversed.*