# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Chesapeake and Ohio Railway Company v. Bullington's Adm'r.

### March 22, 1923.

1. Railroads—*Injuries on or Near Track—Licensees—Who are Licensees—Case at Bar.*—In the instant case, an action for death by wrongful act, plaintiff's intestate was walking along the track of defendant railroad, following a much-used and well-defined path along the side of the track near the end of the ties. The evidence was in conflict as to whether he had stepped on the track in front of the train or was only near enough to be caught by the engine as it passed.

   *Held:* That the evidence was sufficient to warrant the jury in finding that the decedent was a licensee using the railroad right of way, as many others had long been doing, with the company's knowledge and accquiescence.

2. Railroads—*Injuries on or Near Track—Licensees—Statute Making it a Misdemeanor to be on Track.*—In the instant case, an action for death, it was contended that the decedent at the time of the accident could not be regarded as a licensee, because he was walking on the track, and section 4469 of the Code of 1919 makes it a misdemeanor for any person to be on a railroad track, except at a crossing, within 100 yards of a moving train.

   *Held:* That section 4469 could not be given the effect contended for. To do so would deprive licensees of the protection which has always been accorded to them, there being many cases in which recoveries have been allowed to licensees who have been injured on the track while apparently violating the statute in question.

3. Crossings—*Warnings—What Constitutes a Crossing—Foot Path.*—A county road came down to and stopped at a station, but a crossing led on to a wharf on the other side of the tracks from the place where the road stopped. This crossing was not used by vehicles, but was to all practical intents and purposes an extension of the county road, and was in very general use by pedestrians.

   *Held:* That this was a highway crossing within the meaning of the statute as to warnings to be given by engines at such crossings.

4. Crossings—*What Constitutes a Crossing—Custom of Pedestrians to Cross Tracks Wherever They Pleased.*—In the instant case it appeared from

the evidence that for a distance of several hundred feet to the west of the station pedestrians had long been in the habit of crossing the tracks wherever they pleased.

*Held:* That by reason of such indiscriminate use, this entire stretch of track could not be regarded as a crossing, there being no path across the tracks anywhere within that distance.

5. RAILROADS—*Injuries on or Near Track—Crossings—Sections 3958 and 3959 of the Code of 1919 as to Warnings Limited to Accidents at Crossings.*—Considering the omission of the last sentence of section 1294d, subsec. 24, Code of 1904, from the corresponding section in the Code of 1919 (section 3958) the revisors' note thereon, and the terms of the new section in the Code of 1919 (section 3959), it is apparent that the intent of both sections now in force, as to the signals to be given by an engine upon approaching a crossing and the effect of the failure to give such warnings, was to limit the effect of failure to give the crossing signals to accidents at the crossing. Therefore, these sections have no application to an accident on the track not at a crossing, although the party injured was near enough to the crossing to have been warned by the signals if they had been given.

6. RAILROADS—*Injuries on or Near Track—Crossings—Sections 3958 and 3959 of the Code of 1919 as to Warnings Limited to Accidents at Crossings.*—Even if it could be held that a violation of section 3958, Code of 1919, as to warnings at crossings would entitle any person injured by its violation, whether on a crossing or not, to hold the railroad company liable therefor, it seems certain that the doctrine of comparative negligence introduced by section 3959 of the Code of 1919 can only be applied in cases of a collision *on* the crossing between a train or engine and *a traveler on the highway.*

7. RAILROADS—*Injuries on or Near Track—Crossings—Section 3958 of the Code of 1919 Limited to Accidents at Crossings.*—If section 3958 of the Code of 1919 as to warnings to be given by an engine approaching a crossing had retained the provision of the corresponding section in the Code of 1904, section 1294d, subsec. 24, that the said company shall be liable in damages which shall be sustained by any person by reason of such neglect, or if section 1294d, subsec. 24, had not contained this sentence so significantly omitted from section 3958, and which the revisors in effect said they omitted because they had provided in section 3959 for consequences of failure to give the signals, it might have been held that any person who could show that a breach of the duty to give the signals had resulted in injury to him, might maintain an action. But when sections 3958 and 3959 are read together in the light of the revisors' note, it is clear that the intention of these sections was to cover every case coming within their influence and to limit the consequences of failure to give the signals to crossing accidents.

8. STATUTES—*Construction—Extending Benefits of Statutes to Persons Not Specifically Designated.*—Courts generally have shown a disposition to extend statutes in regard to warnings to be given by engines approaching crossings so as to permit persons other than those in the class specifically designated for protection to rely on a breach of the duty to give signals as some evidence of neglect, along with other facts tending to show breach of duty on the part of the defendant. But this can only be done where the terms of the statute are fairly open to such construction.

9. RAILROADS—*Injuries on or Near Track—Last Clear Chance—Case at Bar.*—In the instant case plaintiff's decedent, a bare licensee, was discovered by the engineer upon or near the track as soon as it was possible to do so. The engineer applied the brakes and sounded the whistle, but the train, while not exceeding the speed limit, was moving so fast that it was impossible to avert the accident. The fireman saw the decedent a second or two before the engineer, but the intervening time was wholly insufficient to enable him to communicate with the engineer or do anything himself before the engineer saw the decedent.

*Held:* That after the enginemen saw the situation, the accident happened so quickly that neither had a last clear chance to avert the injury.

10. RAILROADS—*Injuries on or Near Track—Licensees—Duty of Warnings—Case at Bar.*—In the instant case plaintiff's decedent was killed while following a much-used and well-defined path along defendant's tracks. It was contended for plaintiff that some previous warning should have been given before the train came around the curve, because the company knew the right of way was very commonly used by pedestrians at that point.

*Held:* That this contention was without merit.

11. RAILROADS—*Injuries on or Near Track—Licensees—Duty to Warn.*—A railroad company does not owe to a licensee any duty of previous warning. The duty owing to such licensee is not any duty of prevision, but with the facilities at hand and under the circumstances as they existed at the time, to exercise reasonable care to discover and avoid injuring him.

12. RAILROADS—*Injuries on or Near Track—Licensees—Duty of Railroad.*—It is not the duty of a railroad company to have a lookout on its front car, or to make any previous preparation for the discovery of licensees on its track. A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there.

13. RAILROADS—*Injuries on or Near Track—Licensees— Duty of Railroad.*—A railroad company does not owe to a licensee the duty of running its train in a particular manner, or at a particular rate of speed, and is

under no obligation to keep a lookout on its car, or ring its bell, or to blow its whistle, and the mere failure to do any or all of these things does not give him a right of action.

Error to a judgment of the Circuit Court of New Kent county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and final judgment entered for the defendant.*

The opinion states the case.

*Henry Taylor, Jr., R. M. Lett* and *Sherlock Bronson,* for the plaintiff in error.

*Henley, Hall, Hall & Peachy,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

Robert Bullington, Jr., a boy twelve years of age, was killed by a train owned and operated by the Chesapeake and Ohio Railway Company, and this action for damages was brought against the company by his administrator. There was a verdict and judgment below in favor of the plaintiff, and the defendant assigns error.

The accident happened near Lanexa, an unincorporated village in New Kent county. The railroad, which is double tracked and constructed on an embankment at that point, approaches Lanexa station from the east on a rather sharp curve. Just before he was struck the boy was walking east, following a much used and well defined path along the side of the eastbound track near the end of the ties. A long freight train was moving west on the west track and the boy was killed by a fast express train which came up behind him on the east-

bound track. The evidence was in conflict as to whether he had stepped on the track in front of the train or was only near enough to be caught by the engine as it passed. In either event, it is manifest that he did not know that the express train was approaching because the path was of such width as that he could without difficulty have stepped out of its way by moving a little farther from the track.

The engineer and fireman were keeping a reasonable lookout and saw him as soon as it was possible for them to do so, and thereafter they left nothing undone which they could have done to avoid the injury. There is no evidence of any probative value upon which to base the doctrine of the last clear chance.

[1, 2] The plaintiff's evidence was sufficient to warrant the jury in finding that the boy was a licensee using the railroad right of way, as many others had long been doing, with the company's knowledge and acquiescence. There is a contention on behalf of the defendant that he could not at the time of the accident have been regarded as a licensee because he was walking on the track, and section 4469 of the Code makes it a misdemeanor for any person to be on a railroad track, except at a crossing, within one hundred yards of a moving train. That section, however, cannot be given the effect contended for. To do so would deprive licensees of the protection which has always been accorded to them under the law in Virginia as interpreted by our decisions. There are many cases in which recoveries have been allowed to licensees who have been injured on the track, while apparently violating the statute in question.

[3] The evidence on behalf of the plaintiff was further sufficient to show that there was a highway crossing at Lanexa station 385 feet east of the point at which the boy was struck, and that he was on his way to that

crossing and would have used it to cross the tracks and to reach a store to which he was going on an errand for his parents. This crossing was not used by vehicles, but was to all practical intents and purposes an extension of the county road which came down to the station from the north. This county road stopped at the station, but the crossing led on to a wharf on the south side of the tracks, which were situate on the banks of the Chickahominy river, and the crossing was in very general use by pedestrians. This made it a highway crossing within the meaning of the statute. *Norfolk & Western Railway Co.* v. *Bristol*, 116 Va. 955, 962, 83 S. E. 421; *Southern Railway Co.* v. *Abee's Adm'r*, 124 Va. 379, 383, 98 S. E. 31.

It is conceded that no whistle was blown or bell rung for the crossing at the station; and there is a conflict of evidence as to whether any signals at all were given whereby the boy might have discovered the approach of the train before he was struck. Certain witnesses for the defendant, including the fireman and engineer, and including a wholly disinterested party who was near the train at the time, testified that the whistle was blown for Lanexa station, which would have given warning to the plaintiff's decedent, but other witnesses who were in hearing distance testified that they did not hear that signal.

[4] It is shown in the evidence that for a distance of several hundred feet to the west of the station at Lanexa pedestrians have long been in the habit of crossing the tracks wherever they pleased, and there seems to be a contention on the part of the plaintiff that the entire length of the tracks from the point where the boy was killed to the station must, by reason of such indiscriminate use by pedestrians, be regarded as a crossing. This position is not tenable. There was no path across the

tracks anywhere within that distance, and the only crossing which the plaintiff can claim to have proved was the one at the station, 385 feet east of the point of the accident.

What has been said is sufficient to show that we reject the plaintiff's contention that the boy could be regarded as on a crossing at the time of the accident, and also that we reject the defendant's contentions that the boy was not a licensee and that the crossing at the station was not a highway crossing. These, however, are really subordinate points in the case, and we do not understand that they are very seriously relied upon.

The important question is whether the plaintiff is entitled to invoke the benefit of sections 3958 and 3959—either or both—of the Code of 1919. The instructions which the court gave to the jury at the instance of the plaintiff accorded to him the full benefit of both of these sections.

Section 3958 of the Code is as follows:

"Section 3958. *Bell and whistle; liability for failure to use.*—Every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require."

This section is exactly the same as section 1294-d, subsection 24 of the Code of 1904, with the significant

omission of the last sentence of the latter, which was this: "And the said company shall be liable for damages which shall be sustained by any person by reason of such neglect." The revisors appended this note to section 3959 of the Code of 1919, to-wit: "The last sentence of this section as it read in the act (section 1294-d [24], Code 1904) has been omitted. For present effect of failure to give statutory signals see the following section."

The "following section" referred to in the note just quoted is an entirely new section and is as follows:

"Section 3959. *Effect of failure to give statutory signals.*—If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or the destruction of property in his charge, where such injury, death, or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively, but the failure of the traveler to exercise such care may be considered in mitigation of damages." ·

[5, 6] Considering the omission of the last sentence of the old section (1294-d subsection 24), the revisors' note thereon, and the terms of the new section (3959), we have been unable to escape the conclusion that the intent of both sections now in force was to limit the effect of failure to give the crossing signals to accidents at the crossing. This is undoubtedly and unmistakably true as to section 3959. Even if it could be held, as we are asked to hold in this case, that a violation of section 3958 as it now stands would entitle any person injured by its violation, whether on a crossing or not, to hold

the railroad company liable therefor, it seems certain that the doctrine of comparative negligence introduced by section 3959 can only be applied in cases of a collision *on* the crossing between a train or engine and *a traveler on the highway.* The language used does not permit of any other reasonable interpretation; and the revisors' note expressly states that this new section was recommended because "the injuries and deaths *at grade crossings were* becoming so numerous." (Italics added.)

[7] If section 3958 had retained the former provision that "the said company shall be liable in damages which shall be sustained by any person by reason of such neglect," we would have been able to hold that any person, although not a traveler on the highway, could recover damages from the company upon proof that he had relied upon the crossing signals, and that the failure to give them had been the proximate cause of an injury to him or to his property. Such a holding would follow from the opinion of this court in *Shiveley's Adm'r* v. *Norfolk & W. Railway Co.,* 125 Va. 384, 389, 99 S. E. 650, and would be well warranted by much respectable authority from other jurisdictions. But in that event we would, of course, be constrained to hold further that section 3959, cutting off contributory negligence as a bar to the action, could not be invoked because the injury in this case was not to a traveler on a crossing, and the latter section is plainly limited to cases of that kind.

Furthermore, if section 1294 (24) had not contained the sentence so significantly omitted from section 3958, and which the revisors in effect said they omitted because they had provided in section 3959 for consequences of failure to give the signals, it would still have been reasonable and perhaps proper to hold that the duty to give the signals was a public duty for breach of which any person might maintain an action if he could

show that the breach had resulted in injury to him. See Bishop Non-Contract Law, section 132; *Hayes* v. *Mich. Central Railway. Co.*, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410; *C. & O. Railway Co.* v. *Bank*, 92 Va. 495, 504, 23 S. E. 935, 44 L. R. A. 449.

But when we read sections 3958 and 3959 together in the light of the revisors' note, it seems clear that the intention of these sections was to cover in express terms every case coming within their influence and to limit the consequences of failure to give the signals to crossing accidents. Being convinced that this limitation was intended by the law makers, we cannot by construction extend the effect of the statute to any other cases. 2 Cooley Torts (3rd Ed.) pages 1395-6; 33 Cyc. 784, and cases cited in Note 54.

[8] Undoubtedly the courts generally have shown a disposition, and this court has that disposition, to extend statutes of this kind so as to permit persons other than those in the class specifically designated for protection to rely on a breach of the duty to give signals as some evidence of neglect, along with other facts tending to show breach of duty on the part of the defendant. 33 Cyc. 785; *Shiveley's Adm'r* v. *Norfolk & W. Railway Co.,. supra.* But this can only be done where the terms of the statute are fairly open to such construction.

The *Shiveley Case* referred to above, and very earnestly relied upon by counsel for the plaintiff, is not controlling authority in this case for two reasons: First, that the decision therein was rendered while section 1294-d (24) was in force, and second, that Shiveley was on the crossing, according to evidence which the jury accepted as true, at the time he was killed.

[9] Upon a careful consideration of the voluminous evidence in this case, we have been unable to find any

ground on which a recovery for the plaintiff could be sustained. The little boy was a bare licensee, the engineer and fireman were looking ahead and discovered him as soon as it was possible to do so, and thereafter, it was physically impossible for them to do anything which would have averted the accident. The engineer did apply the brakes and sound the whistle, but the train was moving, as it had the right to do, at the rate of about thirty-five miles an hour. The fireman, it is true, saw the boy a second or two before the engineer saw him because from the fireman's side he could see a little farther ahead than the engineer, but the intervening time was wholly insufficient to enable him to communicate with the engineer or do anything himself before the engineer came in sight of the boy. After the fireman and the engineer saw the situation the accident happened so quickly that it would be entirely unreasonable to hold that either of them had a last clear chance to avert the injury. See *Norfolk & Southern Railway Co.* v. *White*, 117 Va. 342, 84 S. E. 646.

[10, 11] The plaintiff contends that some previous warning should have been given before the train came around the curve, because the company knew the right of way was very commonly used by pedestrians at that point. The engineer and fireman and other witnesses, as we have already seen, testified that the station signal was blown before the train came in sight of the boy, and there is some negative testimony by other witnesses to the contrary. The latter testimony is very unsatisfactory, but is perhaps sufficient, as counsel for defendant concede, to take the case to the jury upon this point if it were material; but it is not material because the defendant did not owe the boy any duty of previous warning. The duty owing to him was, as we said in *Wash. & O. D. Co.* v. *Ward*, 119 Va. 341, 89 S. E. 143,

"not any duty of prevision," but, "with the facilities at hand and under the circumstances as they existed at the time, to exercise reasonable care to discover and avoid injuring" him. The instant case upon this point is controlled by the decision of this court in the case of *C. & O. Ry. Co.* v. *Saunders,* 116 Va. 826, 83 S. E. 374, wherein the law in this State was declared to be, as succinctly stated in the fifth and sixth headnotes thereto, as follows:

[12] "5. * * .—It is not the duty of a railroad company to have a lookout on its front car, or to make any previous preparation for the discovery of licensees on its track. A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there.

[13] "6. * *.—A railroad company does not owe to a licensee the duty of running its train in a particular manner, or at a particular rate of speed, and is under no obligation to keep a lookout on its car, or ring its bell, or to blow its whistle, and the mere failure to do any or all of these things does not give him a right of action."

The case, so far as the facts are concerned, was fully developed by the evidence, and we perceive no reason why there should be another trial. We shall, therefore, for the reasons indicated above, enter a final judgment here in favor of the defendant.

*Reversed and final judgment entered for the defendant.*